**UNITED STATES of America**

v.

**James L. BUTLER, a/k/a Jesse Green,
Appellant.**

**No. 73–1193.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 1, 1973.

Decided April 16, 1974.

Jean J. Provost, Jr., Washington, D. C. (appointed by this Court), for appellant.

William D. Pease, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John J. Mulrooney, Asst. U. S. Attys., were on the brief for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and WILKEY, Circuit Judges.

FAHY, Senior Circuit Judge:

The appeal is from a conviction of robbery, in violation of 22 D.C.Code § 2901. The evidence established beyond a reasonable doubt that on February 16, 1972, at about 7:25 p. m. Butler forcibly took a purse from an elderly woman on the street, and fled. The only factual issue respecting the offense itself is whether he was so intoxicated that he lacked the specific intent necessary to a

conviction of robbery. One officer testified that when arrested appellant had alcohol on his breath but appeared to be sober, ran in a straight line, and stood quietly when arrested.[1] Appellant testified he had drunk a good deal of wine during the day, was intoxicated at the time of the offense, had no recollection of it, that he had been diagnosed as an alcoholic "many times," and had been in mental institutions on four separate occasions as a result of his drinking. It was also stipulated:

> If Dr. Lawrence C. Sack, Staff Psychiatrist with D.C. Department of Human Resources were to testify, he would state that he examined and interviewed the defendant, James Lee Butler, on June 12, 1972, and in his opinion the defendant is a chronic alcoholic and frequently drinks to access [sic].

Additional testimony tended to support appellant's reliance upon his alcoholic habit to preclude a finding of specific intent to rob.

Prior to trial the District Court, on motion of the defense, issued a subpoena for the records of a urine test of appellant conducted at the jail on February 17, 1972, the day after the offense. In response to the subpoena the Senior Medical Officer of the Detention Services, a staff physician at the District of Columbia Jail, advised appellant's counsel that although urine specimens were submitted that day, ". . . no results have been obtained . . . although exhaustive search has been made but to no avail." Relying upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the defense moved for dismissal. The motion was denied, and it is urged on appeal that this was reversible error since the result of the test was material to the defense and, under *Brady*, should have been made available.

The Government contends that even if the test were made there could have been no obligation on its part to disclose its result, since the evidence would not have been obtained by an investigative agency in gathering evidence with respect to the offense. The Government now recognizes, however, that the record is silent as to the purpose of obtaining the sample for testing. It may have been to obtain evidence of appellant's condition as it might bear upon his condition the evening before, and, in any event, the result of the test might have had a bearing on his condition at that time. If so we think the test would be within the ambit of the discovery rules. The relationship of the evidence to the offense would control the right of the defense to have it preserved, not which agency of the government conducted the test.

■ The Government also denied any obligation on its part to disclose the result of the test, assuming it was made, since the urine sample was obtained the day after the robbery and, therefore, would have been irrelevant to appellant's condition at the time of the offense. This is a question of fact as to which the record is silent. If the test were made, present lack of knowledge as to its bearing upon his condition at the time of the offense, if it might have shed light thereon, would not foreclose inquiry as to the obligation of the Government to have preserved the evidence, or foreclose consideration of sanctions for failure to do so. United States v. Bryant, 142 U.S.App.D.C. 132, 439 F.2d 642, 648 (1971).

> . . . it is the law in this circuit that the due process requirement applies to all evidence which "might have led the jury to entertain a reasonable doubt about [defendant's] guilt". . . . (Footnote omitted.)

*Ibid.* Upon consideration of United States v. Augenblick, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), the *Bryant* court also concluded that a good faith loss of important evidence "must

---

I. The testimony of a teenager, a member of the neighborhood "Courtesy Patrol," who stopped appellant within seconds after the robbery, is to the same effect.

not be allowed to swallow the discovery rules." 439 F.2d at 651.

■ To determine whether the test was made, as to which the record is not clear, and, if made, its possible bearing upon the defense of lack of specific intent, a remand is required, the full scope of which depends upon those determinations. Should a hearing on the remand result in a finding by the District Court that, though a sample of appellant's urine was taken February 17, 1972, no test was made, that would end the matter, and the judgment of conviction would remain undisturbed. Should it develop that a test was made but its result could not have afforded any significant light upon appellant's degree of intoxication at the time of the offense then, again, the purpose of the remand would have been served, and the judgment of conviction would remain undisturbed.

Should the court find, however, that the test was made, and that it might have been relevant and material with respect to any criminal proceeding involving appellant growing out of the arrest, then the court would be under the necessity of ascertaining the circumstances which led to the non-preservation of the result of the test, including what procedures if any had been established to preserve such evidence.

> . . . before a request for discovery has been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later.

*Ibid.*

Finally, the court would be required to consider and decide what sanctions, if any, should be applied because of the non-preservation and non-availability of the possibly relevant and material evidence.

We turn now again to the *Bryant* decision for its discussion of possible sanctions in the context of that case:

> . . . we hold that sanctions for non-disclosure based on loss of evi-

dence will be invoked in the future unless the Government can show that it has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve *all* discoverable [21]

> 21. Although there is an exception for good faith loss of evidence, there is no exception for good faith administrative decision that certain evidence is not discoverable and thus need not be preserved. The Supreme Court made that much clear in Brady v. Maryland, *supra* Note 6, 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Hence, in framing their rules for evidence preservation, investigative agencies must define discoverable evidence very broadly, including any materials that "might" be "favorable" to the accused. *See* Notes 5–7, *supra.* It should also be made clear that by *"all* discoverable evidence" this court includes materials discoverable under the Jencks Act as well as under *Brady* and Rule 16.

evidence gathered in the course of a criminal investigation. The burden, of course, is on the Government to make this showing. Negligent failure to comply with the required procedures will provide no excuse. Although we leave it up to the various investigative agencies to draft rules suited to their own method of operation, all such rules will be subject to review of their adequacy to the assigned task. (Emphasis in original.)

439 F.2d at 652.

This discussion in *Bryant,* however, is directed to the obligation of investigative agencies and cannot be applied unqualifiedly to the authorities at the jail in this case, for they cannot reasonably be held to have construed these obligations of establishing preservation procedures as intended for them as well as investigative agencies. Nevertheless, there was a general obligation upon the custodial authorities to preserve evidence obtained by them which might be relevant and material to the case involving appellant. And if this obligation arose, due to the result of the test, and reasonable care was not exercised in aid of preservation, the question of sanctions arises. Here again *Bryant* is help-

ful, for when the evidence is not available:

> . . . the issue is whether full sanctions for nondisclosure ought to be invoked absolutely, or whether imposition of sanctions ought to depend upon the circumstances of the material's disappearance.

439 F.2d at 651.

Moreover:

> . . . criminal convictions otherwise based on sufficient evidence may be permitted to stand so long as the Government made "earnest efforts" [to be defined quite strictly] to preserve crucial materials and to find them once a discovery request is made.

*Ibid.* And see the disposition of the *Bryant* case after the remand. United States v. Bryant, 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971).

▆ A sanction of dismissal of the indictment, urged by appellant, would not be within the range of the court's discretion in this case, since it is quite clear that even if the specific intent essential to a robbery conviction might not have been found by the jury, were the result of the test available for the jury to have considered, there was proof beyond a reasonable doubt of the lesser included offense of simple assault, which does not require proof of specific intent. Walker v. United States, 135 U.S.App. D.C. 280, 418 F.2d 1116, 1120 (1969). This suggests the possibility of a sanction of setting aside the robbery conviction and entering a judgment of conviction of simple assault. *Cf.* United States v. Whitaker, 144 U.S.App.D.C. 344, 447 F.2d 314, 322 (1971).

Should the United States consent, the District Court, as an alternative to a hearing on the remand, may in its discretion adopt the course above suggested as a possible sanction; that is, dispense with such a hearing and set aside the judgment of conviction of robbery and enter a judgment of conviction of simple assault.[2]

Remanded for further proceedings consistent with this opinion.

WILKEY, Circuit Judge, dissenting:

This is a simple little case of robbery on the streets, in which I must regretfully part company with my two esteemed colleagues in their action in remanding the case to the trial court.

If action in this case were all that was at stake, I would not take the trouble to record this dissent. But unfortunately, the action of the majority here is all too symptomatic of actions frequently taken by this court, in remanding cases for reconsideration by the trial court—cases which in any fair and well-ordered system of justice would long ago have reached the stage of finality. This unfortunate tendency to remand, remand, to retry, retry, seems to be prompted by the belief that an appellate court, with the benefit of perfect hindsight, has the duty to correct every error or omission that was made by defense trial counsel. All too frequently, not until the defense has had every opportunity, originally and on remand, to exhaust every possible defense which the very able and experienced minds on this court can retrospectively conceive, is this court willing to affirm a conviction. I most respectfully submit that this misconceives the role of an appellate tribunal, substitutes appellate judgment and action for not only that of the trial judge, but even for that of defense counsel.

Now to the particularities of Mr. Butler's case.

First, as to the missing record of the urine analysis, which may or may not have been made the day after the arrest, I suggest that my colleagues have reversed the burden of proof as to a showing of existence and, perhaps most im-

---

2. There was substantial support in the record at trial of appellant's severe alcoholic habit as it might have borne upon his defense to the robbery charge; and we note that the trial judge submitted to the jury the lesser included offense of simple assault as within the range of permissible verdicts.

portant, relevancy. The majority opinion states, "To determine whether the test was made, as to which the record is not clear, and, if made, its possible bearing upon the defense of lack of specific intent, a remand is required, the full scope of which depends upon those determinations." (P. 1008)

Each of these two questions should have been fully developed by defense counsel in the record of the hearing on the defense's subpoena for the urine test and in the trial itself. The defense strategy was to show a lack of specific intent because of intoxication at the time of the offense. The burden of producing evidence, and of establishing the relevance of the evidence, is clearly on the party advocating the defense.

There is absolutely nothing to be done on remand which could not have been done in the hearing on the motion or during the trial itself. There is no new knowledge subsequently acquired by the defense, there are no new witnesses to be examined, there is absolutely nothing on which the trial judge is to conduct an inquiry on this remand, which he would not have already done, if defense counsel had called the witnesses and asked the right questions at trial.

This is perfectly illustrated by the three possible results of such a remand hearing now outlined in the majority opinion: (1) finding that no analysis of the urine was ever made; (2) finding the test was made but, since it was made from a sample taken the day after the offense, it could not possibly show defendant's state of intoxication or sobriety at the time of the offense the day before; or (3) finding both that the test was made, and that its results might be relevant and material to the question of the defendant's intoxication defense. (Majority Opinion, p. 1007)

Considering (1), if no test was ever made, why did the defense not pursue the matter intelligently enough and far enough to establish this one way or another in the record at trial? Does the defense not bear the burden of proving that a test *was* made? The defense undertook the burden of showing that the defendant did give a sample of the urine; it logically should have gone further and shown that a test was made or in the process established the contrary.

As to (2), the defense has never stated the provable scientific fact, or proffered the testimony of any physician, or said that it would obtain the testimony of any expert to show that a urine analysis made of a sample taken the day *after* the offense would be probative of the defendant's condition the day before. I submit that the relevance of the possible evidence is a key question that should have been examined—on the initiative of the defense—in the trial court. If a test was made, but is completely nonprobative, the judge should not admit the evidence. The defense has not yet told either the trial court or this court that expert testimony will establish that a test made the following day would be probative of the condition of the defendant the preceding day. Since the defendant offered no proof of relevance, I see no ground for a remand to inquire into the existence of that evidence.

Consider a simple example exaggerated for clarity. If on hearing on the subpoena or at trial below the defendant had claimed the Government had taken from him the keys to his apartment and lost them, and that the defendant wished to offer them in evidence, the first inquiry of the trial judge no doubt would have been, "What relevance does this have to the charge of a street robbery?" The trial judge would have pointed out that until the relevance had been explained to him, he was not about to conduct any lengthy inquiry as to the whereabouts of the keys, because even if located and produced in court, he would have to be shown the relevance before the keys were admitted in evidence; and if they could not be produced in court, he certainly was not going to impose sanctions on the Government for misplacing property of the defendant, property which did not constitute evidence in the case at bar.

And so it is here. The first task of the trial judge on remand, it appears to me, will be to hear at least one expert witness as to whether the urine sample taken the day after the offense could possibly shed any light on the condition of intoxication or sobriety of the defendant at the time of the crime. Until it is established that the evidence, if located, will be relevant, I do not think the judge should waste much time trying to find it. And certainly, if the expert testimony shows that the so-called evidence could not be relevant, then the judge should impose no sanctions on the Government, as my colleagues agree.

˙ All in all, everything to be done on this remand could have been and should have been done at the initiative of the defense at either the hearing on the subpoena or at the trial itself.

Secondly, as to the third alternative of my colleagues (p. 1007) and the sanctions to be applied against the Government, if the evidence is missing through fault of the Government and could be material to the charge. The majority opinion suggests "The possibility of a sanction of setting aside the robbery conviction and entering a judgment of conviction of simple assault . . . as an. alternative to a hearing on remand, . . ." (Pp. 1007, 1008) This offers an easy way out for the prosecution and the trial judge. I voice the hope that they do not accept it. The jury did not. The jury was properly charged as to the lesser included offense of simple assault. The defense had sought to prove that the defendant was too intoxicated to form the specific intent necessary for a robbery conviction. Therefore, if the jury had entertained any doubts concerning defendant's guilt of the offense of robbery, it could have reached the "compromise" suggested by the majority of convicting the defendant of simple assault. Nevertheless, with the defendant before it and having heard the evidence, the jury found the defendant guilty of the most serious offense charged.

What we have here is a suggestion by this court to mitigate the two- to six-year sentence imposed on this chronic alcoholic. That is not the function of an appellate tribunal, especially when the trial judge and the jury, both of whom are in a much better position than we to weigh both the guilt and the character of this defendant, had exactly the same compromise available to them and declined to take it.

The jury found the defendant guilty ˙ of robbery. The only possible point for reversal which ·this appellate court has found rests on some "missing evidence," which may never have existed and, if existed, has never been established (or a proffer made on this question) to be relevant to the charge. I would affirm the jury's verdict, without any further exploration of matters which the defense properly should have explored in the first instance, and without accepting any compromise reduction of a fully supported conviction to a lesser included offense.