## UNITED STATES of America

v.

## Albert M. QUIOVERS, Appellant.

### No. 75–1756.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 9, 1976.

Decided June 22, 1976.

As Amended on Denial of Rehearing
Aug. 25, 1976.

---

Carol Garfiel Freeman, Washington, D.C. (appointed by this court), for appellant.

Henry H. Kennedy, Jr., Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry and James F. Rutherford, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

Appellant was convicted on one count of unlawful distribution of cocaine, 21 U.S.C. § 841(a), for a sale to a Drug Enforcement Agency (DEA) undercover agent on November 5, 1974. The Government's evidence at trial consisted principally of three items: testimony of a forensic chemist that the bag of powder listed as Government Exhibit 1 contained 22.3% cocaine (Tr. 194–201); testimony of Agent Clinton Perry that on November 5 appellant sold him the cocaine that was Government Exhibit 1 (Tr. 212–20); and testimony of Agent James Rivera that he (1) saw Perry enter the house where the transaction took place and leave some fifteen minutes later, (2) met Perry a few blocks away, and (3) field tested the powder that Perry had obtained from appellant. (Tr. 305–06). Appellant presented no evidence in defense.

This appeal raises a single contention—that DEA's failure to preserve a tape recording of a telephone conversation between Perry and appellant that took place on November 13, 1974, requires dismissal of the indictment. In that conversation Perry complained about the quality of cocaine he had bought from appellant in another purchase on November 11. It is not clear that the conversation referred in any way to the November 5 transaction; Perry testified that he believed it did not, although on cross-examination the defense elicited from him a concession that some reference may have been made to the quality of the November 5 sale, by way of comparison. (Tr. 23–27).[1]

---

1. The Government's brief is misleading in this regard. On page 3, it states that Agent Perry testified that "he did not think that the initial November 5 transaction was discussed during any of the recorded [November 13] conversation," citing page 24 of the Transcript. Although page 24 does support the quoted statement, a mere three pages later, in discussing the November 13 conversation and Perry's complaint about the quality of the narcotics

The evidence was largely undisputed, and the District Judge found, that DEA's failure to preserve the tape was not deliberate (Tr. 166–67, 317), and that DEA had established uniform and explicit procedures for preservation of such evidence (Tr. 164); he did, however, find DEA negligent for failing to follow those procedures (Tr. 164–65). Although we cannot condone negligence of this sort, we do not believe it requires dismissal of the indictment. The District Judge's findings, see Tr. 316–17, and Agent Perry's testimony, reflect a measure of uncertainty that the tapes contained any reference to the November 5 transaction. Even assuming that some reference occurred, Agent Perry's testimony indicates that it did not call into question that a sale was made, and indeed related only to the quality of the narcotics sold. In the pretrial proceedings there was both a suggestion that appellant—who was a party to the conversation—might make a proffer (Tr. 132–33) and an indication from the District Judge that he might dismiss the indictment were some showing of prejudice made (Tr. 166–67). Nonetheless, appellant neither described the conversation nor offered any reason to believe that the conversation, if it took place, would have aided his defense, even as to the credibility of Agent Perry or the possibility of entrapment.

■ We recognize the logical force of the contention that it is impossible to determine with certainty whether a defendant was prejudiced without knowing precisely what is contained on the missing tape recording.

However, dismissal of an indictment is a severe sanction, see, e. g., United States v. Carpenter, 166 U.S.App.D.C. 358, 510 F.2d 738, 740 (1975) (per curiam), and absent any colorable argument that prejudice existed, see Tr. 166–67, 317, we are reluctant to invoke it with respect to mere negligence of the sort involved here.[2]

This result is consistent with prior decisions in this circuit. The basic rule, announced in United States v. Bryant (Bryant I), 142 U.S.App.D.C. 132, 439 F.2d 642, 652 (1971) is that

> sanctions for non-disclosure based on loss of evidence will be invoked in the future unless the Government can show it has promulgated, enforced, and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence . . . . Negligent failure to comply with the required procedures will provide no excuse. (Emphasis in original) (footnote omitted).

Bryant I makes clear that in a case like this one, where the loss of evidence took place after the date of that decision and was traceable to the negligence of a law enforcement agency clearly governed by the duty of preservation, sanctions are available. However, nothing in Bryant requires that the automatic sanction be dismissal of the indictment. Although that sanction may appropriately be invoked in some cases—such as where the loss of evidence is deliberate or results from an agency's failure to prescribe adequate systematic procedures,[3] or where there is a substantial likeli-

___

purchased on November 11, the following exchange took place:

> Q. So you compared [the narcotics purchased on November 11] with the quality of the November 5th because you had only made two purchases then, right, sir?
> A. That's correct.
> Q. So you did talk about November 5th on the 13th, right?
> A. Well, if there was, I mentioned it.

2. We need not indicate whether we would rule similarly if there were either greater reason to believe that a conversation on a missing tape was material, or less basis for concluding from

the testimony of law enforcement officials that the loss was not prejudicial. A significant differing circumstance might also be presented if a defendant were not a party to the conversation and hence not in a position to proffer his version of what was said.

3. Cf. United States v. Harrison, 173 U.S.App. D.C. 260, 524 F.2d 421, 434 (1975) ("Full sanctions will be invoked in future cases unless the FBI's [systematic] practices are modified to embody a suitably broad definition of discoverable evidence and to preserve rough notes from witness interviews.")

hood of serious prejudice to the defendant—*Bryant* does not mandate the mechanical invocation of so harsh a remedy.[4] Indeed, the opinion in *Bryant,* drawing on the Supreme Court's decision in *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), recognized that imposition of sanctions should depend on the circumstances of the material's disappearance, 439 F.2d at 651, and this court more recently stated, albeit in a slightly different setting, that "[n]o public policy would be served by dismissing an indictment where there is no colorable showing of prejudice to the defendant and where no officer or agent of the government has acted deliberately to disadvantage the defendant," *United States v. Carpenter, supra,* at 740.[5] In *United States v. Butler,* 163 U.S.App.D.C. 1, 499 F.2d 1006 (1974), we remanded to determine whether jail authorities had performed and misplaced a urine test and, if so, whether it might have borne upon defendant's specific intent and hence prejudice might have resulted from its nonpreservation. The court noted that should it find the test was made and might be material, it would have to consider the circumstances leading to nonpreservation, including whether regular procedures for preservation of evidence existed. It continued by indicating that it would also be required to consider "*what sanctions, if any,*" should be applied. *Id.* at 1008 (emphasis supplied).

None of this in any way undercuts *Bryant's* teaching that nonpreservation of

evidence will not be excused just because it is attributable to mere negligence. Rather, it reiterates *Bryant's* teaching that the total circumstances must be considered in determining what sanction to apply. We note Judge Leventhal's suggestion that sanctions other than dismissal of the indictment are appropriate:

> One alternative, of course, would be a "prophylactic" Jencks-type sanction of exclusion of testimony. That might be appropriate, for example, if there appeared to have been some official misbehavior in failing to preserve the notes, or if other circumstances showed a strong likelihood that the notes would have undercut the witness's in-court testimony. I am not clear whether that can or should be an invariable sanction. In some circumstances, and particularly in the face of a general routine of preservation, such as the D.C. police have established, the absence of notes may be the kind of mishap best handled by instructing the jury with an adaptation of the kind of instruction used in case of a missing witness, that the jury is free to infer that the missing original notes would have been different from the testimony at trial and would have been helpful to defendant.

*United States v. Bundy,* 153 U.S.App.D.C. 191, 472 F.2d 1266, 1269 (1972) (Leventhal, J., concurring).

In the case before us, there was no testimony at trial relating to the substance

---

**4.** It might be argued that language from this court's decision in *United States v. Bryant* (*Bryant II*), 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971) (per curiam), points in a different direction. There, the ruling in *Bryant I* was summarized as follows:

> We announced that, in the future, federal investigatory agencies must promulgate and rigorously enforce rules designed to preserve all discoverable evidence and that nonpreservation caused by failure to follow the rules, whether in bad faith or mere negligence, will result in imposition of full sanctions.

*Id.* at 1183. If "full sanctions" were taken to mean only dismissal of the indictment, *Bryant*

*II* might seem to require automatic dismissal. It is not clear, however, that that phrase must be so interpreted, and to do so would represent an expansion of the language in *Bryant I.* Particularly in light of the subsequent decisions we note in text, we find nothing in *Bryant II* requiring us to dismiss the indictment.

**5.** *Carpenter* involved the unavailability of the transcript of a preliminary hearing, due to the inadvertent recording-over of the tape thereof; the failure to preserve was attributable to either the magistrate's office—a neutral party with respect to the investigation and prosecution—or the private company selected to prepare the transcript.

of the November 13 conversation that had any bearing on the November 5 transaction, *see* Tr. 257; this, and the fact that a sanction was never requested, dispose of the appropriateness of the Jencks-type exclusion of testimony. The record indicates that appellant did, albeit ambiguously ("I, also, would request in terms of the language of the missing witness in terms of the tapes to the jury"), request a missing witness instruction as to the tapes. That request, however, was not pressed when the court failed to rule upon it in the course of denying two other requests (including another missing witness instruction relating to a named individual) made at the same time; and thereafter appellant (1) responded negatively when the court asked if there were any further matters to be pursued and (2) expressly professed to be satisfied with the instructions upon inquiry by the court after they were given. Under these circumstances, the uncertainty that the missing tape recording even contained a reference to the November 5 transaction; the fact that the missing recording was not of the conversation constituting the criminal transaction itself; and, in any event, the lack of any reason to believe, even giving appellant the benefit of all doubt, that any passing reference that might have existed would have significantly assisted him in defending against the count on which he stands convicted, all lead us to conclude that the judgment should be affirmed.

*It is so ordered.*