OPINION OF THE COURT
Paul T. D’Amaro, J.
A hearing was conducted pursuant to a postconviction application made by defendant for dismissal of the indictment based upon the alleged failure of the People to preserve and produce certain evidence. The court, in addition to considering this case as a motion to dismiss, will also treat it as a motion to set aside the jury’s verdict, convicting defendant of two misdemeanor counts of perjury.
During the course of the trial which was conducted in June of 1977, in the course of cross-examination of a prosecution witness, one Detective Brooks, it was elicited from the witness *157 that he kept notes concerning a conversation had with the defendant in the District Attorney’s office. This came as a surprise to both the defense counsel and the prosecution, particularly since defense counsel had made repeated requests for discovery of any notes, transcripts or recordings of said interview and was advised that none were taken.
The purpose of the hearing was to determine what happened to these notes and further to determine what their significance would be concerning the charges against the defendant.
The substance of the charge against the defendant emanates from an interview that took place in the District Attorney’s office with the defendant late in April of 1975. The focus of this particular phase of the investigation concerned alleged bid-padding by the general contractor of the Paar Meadow racetrack, by whom the defendant was employed.
Subsequent to said interview, the defendant was called before the Grand Jury and, in response to a question by the Assistant District Attorney who conducted the interview, as to whether or not the bid that was finally submitted was very high, he responded "No”, but that "maybe it was a little high”. The District Attorney then asked whether or not defendant had told him during the April, 1975 interview that the bid was "very high”, to which he responded "No”, resulting in one count of perjury.
He was then asked whether he was present in the conference room when the negotiations were taking place where the alleged padding of the bid took place, to which he responded "No”. He was then asked whether or not he told the District Attorney at the April interview that "he did not recall whether or not he was in that conference room”. He stated he did not say that, resulting in the second count of perjury.
Detective Brooks testified at the hearing and indicated that he made notes of the conversation during the two-hour interview of the defendant in the District Attorney’s office. Present at this interview were two other police officers and the Assistant District Attorney, who was conducting the interview. The notes that he was taking were taken in open view, so that all that were in the room were in a position to notice that such notes were being taken. He further testified that the notes were then placed in a filing cabinet in the District Attorney’s office, but that he was unable to recall which particular filing cabinet, since the records of the investigation that was going *158 on concerning the Paar Meadow racetrack were kept in approximately five separate file cabinets containing about 25 separate drawers. Detective Brooks was unable to recall the content of these notes or how detailed and extensive they were. His last recollection of seeing them was sometime prior to the Grand Jury proceedings at which the defendant testified, resulting in this indictment for perjury and contempt.
Detective Brooks further indicated that no one connected with the prosecution of this case ever asked him whether he had made any notes nor did he volunteer this information to anyone. He further stated that approximately two weeks before the trial of this action, he was asked by the Assistant District Attorney, then handling the case for trial, to recheck the files to see if there were any notes or other evidence which could be used for the purposes of the trial. He again failed to indicate that he had taken notes nor was he asked. He then checked through the filing cabinets and was unable to locate the notes which he had taken.
The Assistant District Attorney who was initially assigned to handle this case after indictment then testified that upon receipt of requests by defense counsel for any notes taken of the interview of the defendant in this case, he checked with the chief of the rackets bureau, who had conducted the interview to determine whether notes were taken and was advised that there were none. He further checked with one of the other police officers at the interview and was also advised that no notes were taken; whereupon he advised the defense counsel that there were none. Further testimony was elicited to indicate that the procedure employed in the preservation of these notes was to place same in the filing cabinets set aside for this particular investigation with no definitive system for filing or indexing.
CONCLUSIONS OF LAW
The People have a heavy burden of establishing that the failure to preserve the evidence in this case was not intentional, deliberate or in bad faith. (United States v Bryant, 439 F2d 642, 651.) The District Attorney’s office is chargeable with the knowledge of the police officials, its own files, and most certainly of the chief of the bureau in the District Attorney’s office. To dismiss it as merely a good faith mistake because they forgot about it would be an oversimplification.
The People’s representations to defense counsel that no
*159 notes existed, left much room for doubt in the court’s mind that such loss resulted merely from ordinary negligence. In this regard it seemed clear that other similar evidence taken during the investigation, to wit, the notes of Detective Brooks, of the interrogation of one Lawrence Jacobson, were in fact preserved and available at the trial. These notes of Jacobson’s interrogation were made under similar circumstances as the notes taken at the interrogation of the defendant. They consisted of seven pages, written by Detective Brooks and on which not only the substance of Jacobson’s responses was set forth, but a number of specific questions and answers.
Although the court cannot indulge in speculation or ground its decision on suspicion, it appears likely that the notes taken by Detective Brooks during the defendant’s interrogation could have an incalculable effect on defendant’s guilt or innocence. It is not enough for the People to say that it might not help the defendant since they have the burden of proof.
Suffice it to say that this court finds that the People were grossly negligent in failing to preserve vital evidence. Whether or not their gross negligence was tantamount to bad faith depends upon the "earnest efforts” made by the People to preserve and locate the evidence. (United States v Augenblick, 393 US 348.) Certainly the more critical the evidence, the greater the duty to preserve. In the case at hand, the court finds that the People’s gross negligence was tantamount to bad faith and the indictment should be dismissed.
By coming to the conclusion that the indictment in this case should be dismissed, this court does not promulgate the proposition that all cases in which gross negligence of the prosecution causes the irretrievable loss of evidence should warrant the dismissal of the indictment.
The case at bar deals with the crime of perjury. It is the utterance of the defendant rather than his actions which are the res of the crime, so that the loss of the only written record of the defendant’s utterances assumes critical importance. This is not merely evidence which would affect credibility or the recording of a past event, it is a record of the event which is the res of the crime. Prior authorities dealing with the question of the sanctions to be imposed for failure to preserve evidence have not dealt with evidence as fundamental to the guilt or innocence of the defendant as in the case at bar. The conviction of this defendant was based on the recollection of words spoken more than two years prior to the trial. The *160 vagaries of such recollection are manifest. The loss of the only record 'of defendant’s statements is therefore critical to the determination of the issues.
This court is aware that United States v Bryant (supra) and the ensuing decisions following the principles enunciated therein, have refrained from imposing the sanction of dismissal. (United States v Bryant, supra; United States v Augenblick, supra; United States v Augello, 451 F2d 1167; United States v Maynard, 476 F2d 1170.) The only appellate decision in this jurisdiction dismissing the indictment (People v Colon, 43 AD2d 676) was founded upon the basis that the defendant in that case, having been convicted of two other crimes in which the loss of evidence was not an issue, dismissed the indictment.
Ordering a new trial in the case at bar would be an exercise in futility absent the production of Detective Brooks’ notes. It is therefore the conclusion of this court that the only applicable sanction to be imposed for the gross negligence of the People tantamount to bad faith, is the dismissal of this indictment.
Accordingly, the motion to set aside the verdict is granted and the indictment herein is dismissed.