Sylvester I. COTTON, Appellant,

v.

**UNITED STATES, Appellee.**

**No. 10600.**

District of Columbia Court of Appeals.

Argued May 10, 1977.

Decided June 8, 1978.

W. Gary Kohlman, Public Defender Service, Washington, D. C., for appellant.

Joel S. Perwin, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER and YEAGLEY, Associate Judges, and BRAMAN, Associate Judge, Superior Court of the District of Columbia.[*]

GALLAGHER, Associate Judge:

After a jury trial, appellant was found guilty of armed robbery.[1] He was sentenced to a term of imprisonment of not less than eighteen months nor more than twenty years. Appellant attacks his conviction on the grounds that the trial court erred (1) in refusing to impose some sanction for the police failure to preserve a photographic array used in a pretrial identification procedure, and (2) in failing to hold a mid-trial hearing outside the presence of the jury to explore the circumstances of a pretrial identification procedure and to determine the admissibility of a witness' identification testimony. Finding no reversible error, we affirm.

In the early evening hours of September 24, 1974, Elnora Taylor, Perquita Bell and Patricia Cooper were working behind the

---

[*] Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

[1] D.C.Code 1973, §§ 22–2901, –3202.

counter of a High's Dairy Store in the District of Columbia. The store was well lit. Sometime between 7:00 and 7:30 p. m., a man entered the store and, after complaining about the price, purchased some candy. After the man left High's, Ms. Cooper commented to the other employees that she thought he was attractive. Within fifteen minutes, the same individual returned to the store, placed a bag with the barrel of a gun protruding on the counter and told Ms. Taylor, who was at the cash register, to "put the money in the bag." She complied and, with the money in hand, the robber backed out of the store. The robbery consumed at least five to six minutes.

The day after the robbery, Ms. Bell and Ms. Taylor separately viewed at the High's store an array of black and white photographs obtained from police files by Detective Campbell. Both employees identified appellant's picture. Later that same day, Detective Campbell showed the identical array to Ms. Cooper at her home. She also selected the photograph of appellant. On November 8, 1974, the witnesses attended a lineup which included appellant. Ms. Taylor positively identified appellant as the individual who had robbed High's. Ms. Cooper failed to make an identification in the lineup room, but immediately after leaving the room told Detective Campbell and the other witnesses that she had recognized "number eight" (appellant) as the robber. Ms. Bell was unable to identify anyone in the lineup.

At the pretrial hearing on appellant's motion to suppress identification testimony, Detective Campbell testified that he was unable to recreate the array from which the witnesses had selected appellant's picture because he had neither preserved the array nor recorded the identification numbers of the photographs which comprised the array.

He stated he was aware of police regulations [2] that required the preservation of all photographs shown to witnesses, but that through a mistake on his part, he had not maintained the photographs.[3] He did testify as to the composition of the array, however. He stated that all the photographs were black and white police department front and side view photographs with the identification number printed on the front. The array consisted of photographs of black males in their twenties. Detective Campbell recalled that approximately one-half of the photographs were of men with braided hair.[4] He stated that the photographs shown to the witnesses were taken from a larger group of photographs of suspects of crimes committed in the Deanwood area of the District.[5] Although Detective Campbell did produce the larger group at the hearing, he conceded that some photographs had been taken from the larger group and still others added since the time of the robbery and that he had no way of knowing which particular photographs had been displayed to the witnesses.[6]

The witnesses, although unable to recall specific details of the array, generally supported Detective Campbell's testimony. Ms. Taylor testified that all the photographs were black and white and were of black males between the ages of 17 and 30. She recalled that the pictures depicted men with different styles and lengths of hair and that there was nothing distinctive about any of them. Ms. Bell also testified that the pictures were of black males between the ages of 21 and 30. She stated that she picked out an individual with plaited hair, and that the hairstyles of all the individuals were different.

The trial court found, in spite of the unavailability of the photographs, that the

---

2. Metropolitan Police General Order Series 304, No. 7H(2), effective December 1, 1971.

3. He also testified it was unusual for him to make such an error.

4. The robber was described by the witnesses as wearing a wide-brimmed hat over corn-rowed hair.

5. This is the area in which the High's store is located.

6. The photograph of appellant which was included in the array was produced at the hearing.

array was not suggestive. It further found that even if the photographs were suggestive, there was a strong independent source for the witnesses' identifications of appellant. Although the trial judge recognized that Detective Campbell's failure to follow police regulations constituted negligence, he refused to apply any sanction. Testimony about the photographic and lineup identifications was permitted at trial. In addition, all three witnesses made in-court identifications of appellant. Appellant did not testify in his own behalf, but presented a defense investigator whose testimony contradicted, in some respects, that of the eyewitnesses.

## I.

■ Appellant first argues that the trial court should have imposed some sanction for the negligence of the police officer in order to mitigate the prejudice to the defense caused by the loss of the photographs. At the pretrial hearing, defense counsel requested the court to consider two sanctions for the failure to preserve the photographs: (1) strike the witnesses' testimony about the photographic identification or (2) strike the officer's testimony about the composition of the array and allow counsel the opportunity to argue its possible suggestivity to the jury.[7]

■ There is no question that "[the government has] a duty to preserve, and the defendant has a right to discover, all photographic arrays from which an identification has been made." *Washington v. United States,* D.C.App., 377 A.2d 1348, 1351 (1977). *See* Super.Ct.Cr.R. 16; Metropolitan Police Department General Order Series 304, No. 7 (Procedures for Obtaining Pretrial Eyewitness Identification, 1971). Where there has been a breach of a dis-

covery rule, the trial court has the authority to fashion an appropriate sanction. *Hardy v. United States,* D.C.App., 316 A.2d 867 (1974).

■ Although *Hardy* involved a lost note containing the victim's description of his assailant which was conceivably producible under the Jencks Act,[8] the question of sanctions for failure to preserve discoverable photographic arrays from which an identification of the accused was made may be similarly analyzed. *Cf. Marshall v. United States,* D.C.App., 340 A.2d 805 (1975).[9] The factors to be considered in determining whether sanctions should be applied are "[1] the degree of negligence or bad faith involved, [2] the importance of the evidence lost, and [3] the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice." *Montgomery v. United States,* D.C.App., 384 A.2d 655, 662 quoting *United States v. Bryant,* 142 U.S.App.D.C. 132, 143, 439 F.2d 642, 653 (1971). Resolution of the inquiry necessarily involves a delicate balancing test of weighing government culpability against prejudice to the defense. Absent an abuse of discretion, the decision of what sanctions, *if any,* to impose is committed to the trial court. *Marshall v. United States, supra; United States v. Butler,* 163 U.S. App.D.C. 1, 499 F.2d 1006 (1974).

■ Deliberate destruction of discoverable evidence designed to hinder preparation of the defense case will be weighed heavily against the government and full sanctions will be imposed. Where good faith loss exists, the court may excuse non-production and refuse to apply sanctions. *E. g., Brown v. United States,* D.C.App., 372 A.2d 557 (1977). Neither extreme applies to this case. The court found the police

---

7. On appeal, counsel for appellant also suggests that as a possible sanction, a variation of the missing witness instruction could have been given. *See United States v. Bundy,* 153 U.S.App.D.C. 191, 194, 472 F.2d 1266, 1269 (1972) (Leventhal, J., concurring). Appellant failed to request such an instruction in the trial court and we therefore need not decide whether it would have been an appropriate sanction. *Montgomery v. United States,* D.C.App., 384

A.2d 655, 662 n. 7 (1978); *see also United States v. Quiovers,* 176 U.S.App.D.C. 265, 539 F.2d 744 (1976).

8. 18 U.S.C. § 3500 (1969).

9. In *Marshall* the item not produced was a stolen purse. We held that the evidence was discoverable under Super.Ct.Cr.R. 16.

officer's handling of the photographic array was "negligent." [10] As noted in *United States v. Perry,* 153 U.S.App.D.C. 89, 95, 471 F.2d 1057, 1063 (1972), "the quest for truth . . . is undercut as much by governmental negligence as by intentional acts of destruction." However, nothing in the decisions of this jurisdiction requires that sanctions be automatically imposed. *See, e. g., United States v. Perry, supra; United States v. Quiovers,* 176 U.S.App.D.C. 265, 539 F.2d 744 (1976). The type of sanction imposed also may vary with the degree of culpability found. In an analogous Jencks Act situation Judge Leventhal noted in *United States v. Bundy,* 153 U.S.App. D.C. 191, 194, 472 F.2d 1266, 1269 (1972), that:

> One alternative, of course, would be a "prophylactic" Jencks-type sanction of exclusion of testimony. That might be appropriate, for example, if there appeared to have been some official misbehavior in failing to preserve the notes, or if other circumstances showed a strong likelihood that the notes would have undercut the witness's in-court testimony. I am not clear whether that can or should be an invariable sanction. In some circumstances, *and particularly in the face of a general routine of preservation, such as the D.C. police have established,* the absence of notes may be the kind of mishap best handled by instructing the jury with an adaptation of the kind of instruction used in case of a missing witness, that the jury is free to infer that the missing original notes would have been different from the testimony at trial and would have been helpful to defendant. [Leventhal, J., concurring; emphasis added.] [11]

Thus, having established negligent government nonpreservation of evidence does not end the inquiry. We must next assess the degree of prejudice suffered by the defense as a result of the officer's inability to recreate the array.

Appellant contends that the exact composition of the photographic array was of crucial importance to preparation of the defense case. Without access to the photographs, appellant argues, he could not persuade the court that the resulting identifications were the product of impermissibly suggestive procedures which may have tainted the prospective identification testimony. He further argues that he was unable to cross-examine effectively the witnesses' photographic identification testimony without viewing the array. We note, initially, that the only hint of suggestivity concerning the array alluded to by appellant is that his photograph may have been the only one depicting an individual with braided hair. The testimony of Detective Campbell refutes this supposition, however. The eyewitnesses supported his testimony to some extent, and we see nothing in the record that would give us reason to doubt his credibility.

Inability to regroup the array does not preclude a finding that the procedure was not suggestive. *See, e. g., Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Washington v. United States, supra; United States v. Clemons,* 144 U.S.App.D.C. 235, 445 F.2d 711, *cert. denied,* 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971). We recognize the logic of the argument that it may be difficult, if not impossible, to determine *with certainty* whether the array was suggestive without the photographs, but when "evaluated in light of the totality of surrounding circumstances," *Simmons v. United States, supra,* 390 U.S. at 383, 88 S.Ct. at 970, we are convinced the court did not err in finding the photographic identification procedure valid. The record shows that all the photographs were black and white photographs of the standard "mug shot" variety depicting black males in their twenties. The witnesses were shown the photographs on the day after the robbery, "while their memories were still fresh." *Id.* at 385, 88 S.Ct. at 972. At least seven photographs were dis-

---

**10.** The government does not contest this finding.

**11.** As noted previously, appellant did not request a similar instruction.

played.[12] The witnesses testified they were asked to view the photographs separately and were not allowed to communicate with each other between viewings. They further testified that they identified appellant's picture without any prompting by Detective Campbell. These circumstances make it unlikely that the police suggested in any way which person the witnesses should identify. Finally, we note that appellant's counsel was allowed wide latitude in cross-examining the government witnesses. Consequently, "[a]lthough the pictures might have been of some assistance to the defense," id. at 388, 88 S.Ct. at 973, we reject appellant's contention that their nonproduction substantially prejudiced presentation of the defense case.

Turning to the last factor—evidence of guilt adduced at trial—we are convinced, given the strength of the eyewitness identification, that the jury would not have reached a contrary verdict even had the photographic identification testimony been suppressed. The record indicates that the witnesses' in-court identifications were positive and that they never wavered from their identification of appellant on cross-examination. Appellant does not here contend that the in-court identifications by the witnesses should have been suppressed and, in fact, conceded at the pretrial hearing that regardless of the possible suggestivity of the array, there "probably" was an independent source for the witnesses' in-court identifications of appellant. We agree. Each of the three witnesses had an excellent opportunity to view the robber. The store was well lit and the robber wore no mask or in any other way attempted to conceal his identity. He entered the store, not once, but twice, thus assuring that the employees would remember him. The first encounter took one to two minutes; the second, at least five or six. He wore a wide-brimmed hat which attracted attention and, significantly, one of the witnesses commented on his attractive appearance.

The same witness also testified that she had lived in the area around the High's store for fifteen years and recalled seeing appellant before the day of the robbery. In addition, at the lineup Ms. Bell positively identified appellant as the robber. Ms. Cooper also stated that she recognized appellant in the lineup, although she did not communicate this fact until she left the lineup room.

We find that the evidence in this case supports the conclusion that the failure to apply sanctions did not substantially prejudice appellant or significantly contribute to the verdict rendered against him. There was little chance of misidentification which would warrant reversal of appellant's conviction. We hasten to add, however, that we might view this differently if there were a greater reason for believing the array suggestive or if this were a less compelling case of identification, e. g., a one-witness identification of the accused under questionable circumstances. We also stress that our holding should not be construed as approval of the investigative procedures employed in this case. We will not hesitate in the future to reverse the trial court for failure to apply reasonable sanctions where there is conceded negligence of the government and the defendant demonstrates substantial prejudice as a result of the nonpreservation of discoverable evidence.

II.

Appellant further assigns as error the trial court's failure to hold a mid-trial hearing regarding Ms. Cooper's identification testimony. Ms. Cooper testified at trial that on the evening of the robbery she was shown a photographic array by an unidentified police officer from which she selected appellant's picture. Both the prosecutor and defense attorney apparently were surprised by this testimony, having thought Ms. Cooper had identified appellant only from the array shown her by Detective

12. Detective Campbell testified that eleven photographs were displayed. At the motions hearing, Ms. Taylor recalled viewing seven or eight photographs; Ms. Bell thought she saw fifteen to twenty pictures. At trial, Ms. Taylor recalled ten photographs; Ms. Bell, ten or eleven, and Ms. Cooper, eight to ten.

Campbell on the day after the robbery.[13] Detective Campbell testified that he had displayed only one array to Ms. Cooper. He further testified that he was present on the evening of the robbery when a group of photographs was shown by members of the uniformed force to one of the witnesses. He was unable to recall which witness viewed the photographs and had no knowledge of what photographs comprised the array or whether appellant's picture was among them.

Appellant contends that he was entitled to an evidentiary hearing to explore the circumstances of Ms. Cooper's pretrial identifications and to determine the identity of the suspect who was identified by Ms. Cooper on the evening of the robbery. He argues a hearing was required under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as it was likely that Mrs. Cooper initially identified someone other than appellant.

At the outset, we note that although appellant raised the issue of the admissibility of Ms. Cooper's testimony in mid-trial, he made no request for an evidentiary hearing. Moreover, Super.Ct.Cr.R. 12(b)(3) requires that a motion to suppress evidence generally must be made before trial. We recognize that Ms. Cooper was out of the country during the hearing on appellant's motion to suppress identification testimony and that appellant therefore did not have the benefit of her pretrial testimony. But Detective Campbell testified at the pretrial hearing that Ms. Cooper had identified appellant from a photographic array and also had identified him after leaving the lineup room. Counsel for appellant therefore could not have been surprised at Ms. Cooper's testimony concerning those identifications and should have challenged the asserted suggestivity of the one photographic[14]

and lineup identifications prior to trial. Since no reason is advanced for the failure to do so, and since the trial court did not "see any suggestivity at all," we are persuaded that the weight to be given those identifications was for the jury to decide. *White v. United States,* D.C.App., 358 A.2d 645 (1976).

Turning to the circumstances of Ms. Cooper's viewing of an array on the evening of the robbery, we conclude that any error in failing to hold a hearing was harmless and does not warrant a new trial.[15] The prosecutor did not rely on this photographic identification and made no mention of it in his closing argument to the jury. The identification testimony upon which appellant was convicted was provided by three witnesses, each of whom had an extraordinarily good opportunity to observe the robber at the time the crime was committed. (See p. 871, *ante*). Two of the witnesses never saw the disputed array and their testimony could not have been fatally tainted by the showing. Ms. Cooper's in-court identification of appellant was apparently based on a source independent of her pretrial identifications of appellant. She testified that she had seen him in the area in which she lived before the robbery and that she had paid particular attention to appellant the first time he entered the store because she thought he was attractive. She also made a prompt identification of appellant on the day after the robbery. The mere fact that some dubious testimony was received does not establish the right to a new trial. "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977). *Cf. United States v. Cain,* 151 U.S.App.D.C. 378, 467

---

13. Ms. Cooper did not testify at the pretrial hearing because she was out of the country.

14. As noted previously, the array shown to Ms. Cooper by Detective Campbell was the same array shown to Ms. Bell and Ms. Taylor.

15. We agree with appellant that discovery was inadequate to notify defense counsel of this photographic array. Even the prosecutor was unaware that Ms. Cooper had identified appellant on the evening of the robbery. This in no way excuses the failure of the police to produce the array, however, if, in fact, Ms. Cooper had made such an identification.

F.2d 704 (1972). The totality of proof bearing on identification leads us to conclude there was not a "substantial likelihood of irreparable misidentification."

 We also reject appellant's contention that *Brady v. Maryland, supra,* mandated a hearing. First, it is pure speculation that Ms. Cooper identified someone other than appellant on the evening of the robbery; she was certain that she had selected appellant's picture. "[T]he remote possibility that the evidence which the government failed to produce might have been favorable to the defense is not, by itself, sufficient to invoke the principles of *Brady." March v. United States,* D.C.App., 362 A.2d 691, 703 (1976). The alleged misidentification must also be material to the issue of guilt. *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). The strength of the eyewitness identifications of appellant renders it unlikely that the questionable array was of sufficient materiality to establish a denial of appellant's due process rights.

The judgment appealed from is

*Affirmed.*