**UNITED STATES, Appellant,**

v.

**Norman A. DAY, Appellee.**

**No. 96–CO–1076.**

District of Columbia Court of Appeals.

Argued June 2, 1997.

Decided June 26, 1997.

---

Steven E. Rindner, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, and Mark J. Carroll, Assistant United States Attorneys, were on the brief, for appellant.

Atiq R. Ahmed, appointed by the court, Silver Spring, MD, for appellee.

Before FERREN, STEADMAN and REID, Associate Judges.

REID, Associate Judge:

The trial court dismissed the indictment against appellee Norman Day on the ground of unconstitutional delay in the indictment, and because of the government's destruction of the automobile involved in the vehicular homicide that led to the indictment. We reverse.

## FACTUAL SUMMARY

On September 20, 1995, a grand jury indicted appellee Norman Day on a charge of negligent homicide, in violation of D.C.Code § 40–713 (1990). The indictment was handed down approximately eleven months after Mr. Day's 1971 Oldsmobile 98 veered out of control on the afternoon of October 13, 1994, and struck two pedestrians standing at a bus stop.[1] One of the pedestrians, Mr. Edwin Diaz, sustained fatal injuries. Mr. Day was not arrested until approximately one year after the accident.

Several weeks after his indictment, Mr. Day filed a "Motion to Dismiss (or Other Relief) on Speedy Trial or Due Process or Fair Trial Grounds," complaining that he "has no way of locating independent witnesses who can back up and bolster his defense, nor can he get the 1978 Oldsmobile [sic] inspected so that an expert witness can testify as to the failed brakes in the automobile." He accused the government of "delay[ing] the case so long that [he] could no longer mount a valid defense." Because of a mistaken belief that the Oldsmobile was no longer needed in connection with any ongoing investigation, the Metropolitan Police Department sent it to a crushing yard where it was destroyed. While the government investigated the car's brakes prior to destruction, Mr. Day did not undertake his own investigation.

The government attributed the delay in Mr. Day's indictment and arrest to "trouble getting the witnesses all together at one time to present them [to the grand jury]." The police attempted to speak with Mr. Day on the evening of the accident, but he was being treated for his injuries. The government apparently made only one other effort to meet with Mr. Day, which also was unsuccessful.

The trial court granted Mr. Day's motion to dismiss on the grounds of the government's (1) "undue delay in returning an indictment," citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); and (2) "gross negligence" in destroying the

---

1. Mr. Day's brakes apparently failed. Just before the accident, Mr. Day reportedly yelled that he had no brakes.

Oldsmobile and thus depriving Mr. Day of an opportunity to inspect it after the accident.

## ANALYSIS

We are confronted with two issues in this matter: (1) whether the trial court properly dismissed the indictment against Mr. Day because his Sixth Amendment constitutional right to a speedy trial was violated; and (2) whether preindictment delay and the destruction of the Oldsmobile violated his due process rights under the Fifth Amendment to the Constitution.

### I. The Sixth Amendment Speedy Trial Issue

■■■ The trial court dismissed the indictment against Mr. Day, in part, because of "unfair and unjust" delay. Specifically, the trial court identified the delay as "delay in the presentation to a grand jury," and applied the factors set forth in *Barker, supra,* to determine whether Mr. Day had been deprived of his constitutional right to a speedy trial. However, *Barker* concerns post arrest delay, not preindictment delay. As we said in *United States v. Kramer,* 286 A.2d 856 (D.C.1972), "the speedy trial guarantee of the Sixth Amendment has no application until the prospective defendant becomes an accused." *Id.* at 859 (citing *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). It is equally "clear that delay from the date of the offense to date the criminal prosecution was begun is not covered by [Super. Ct.Crim. R.] 48(b)" on which the trial court also relied.[2] *Id.* at 860 (citations omitted). Accordingly, Mr. Day's Sixth Amendment right to a speedy trial was not violated by preindictment delay.[3]

---

2. Superior Court Criminal Rule 48(b) reads, in pertinent part, as follows:

   If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the Court, or if there is unnecessary delay in bringing a defendant to trial, the Court may dismiss the indictment, information or complaint.

   In any event, Rule 48(b) provides no basis for dismissal of an indictment *with prejudice* inde-

### II. The Due Process Issues

#### A. *Preindictment Delay*

■■■ Mr. Day contended in the trial court, and maintains here, that the delay between the date of the accident and the date of his indictment violated his due process rights under the Fifth Amendment to the Constitution. However, "preindictment delay is not inherently unfair. To prevail on this argument, [a defendant] must show at a minimum that he actually was prejudiced by the delay and that the government's reasons were unjustified." *Asbell v. United States,* 436 A.2d 804, 812 (D.C.1981) (citing *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977) (other citations omitted)). The government argues that much of the delay must be characterized as investigative delay. In *Lovasco,* the Supreme Court held "that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 796, 97 S.Ct. at 2051–52. In writing for the majority, Justice Marshall observed that

> Judges are not free, in defining "due process," to impose on law enforcement officials our "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." [citation omitted]. Our task is more circumscribed. We are to determine only whether the action complained of—here, compelling respondent to stand trial after the Government delayed indictment to investigate further—violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," [citation omitted], and which define "the community's sense of fair play and decency," *Rochin v. California,* [342 U.S.

---

pendent of the Sixth Amendment. *See United States v. Mack,* 298 A.2d 509 (D.C.1972).

3. During oral argument Mr. Day's counsel abandoned any argument that Mr. Day was subjected to undue delay, in violation of his Sixth Amendment speedy trial right, because of delay from the date of indictment to the originally scheduled trial date of March 27, 1996 and beyond. The government had filed a motion to continue the trial date due to the unavailability of a witness.

165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952) ].

*Id.* at 790, 97 S.Ct. at 2049 (other citations omitted).[4]

Here, the government argues, as indicated, that much of its delay must be characterized as investigative delay, and further maintains there is no evidence of governmental delay designed "to gain tactical advantage" over Mr. Day. *Marion, supra,* 404 U.S. at 324, 92 S.Ct. at 465 ("the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused"). Mr. Day argues that because the trial court found "actual prejudice" due to the destruction of the car and "gross negligence" in delaying the indictment, the indictment must be dismissed under *Lovasco's* interpretation of due process.

■ It is clear that there was delay in the indictment of Mr. Day, but no indication in the record before us that the delay was related to the destruction of the Oldsmobile. The record on appeal reveals that the detective assigned to Mr. Day's matter transmitted the case to the United States Attorney's office about two months after the accident, but presentation to the grand jury was delayed because of difficulty "getting the witnesses together at one time." The detective "had trouble finding witnesses or one of the witnesses was admitted to the hospital and was unable to come in.…"[5] We are aware of no high court state case, and Mr. Day has cited none, in which gross governmental negligence in seeking an indictment has been held to rise to the level of intentional delay for the purpose of tactical advantage.[6] "[I]n the absence of severe prejudice, pre-arrest delay 'will not support a due process claim when the government's actions have been negligent, but not reckless or intentional.'" *Robinson v. United States,* 478 A.2d 1065, 1066 (D.C.1984) (quoting *Smith v. United States,* 414 A.2d 1189, 1195 (D.C.1980)). Under *Robinson,* the legal equivalent of intentional delay would have to be recklessness. However, the government's conduct, though found to be grossly negligent, was neither intentional, nor its possible legal equivalent of reckless. Furthermore, here, the trial court made no finding, nor is one supportable on the record before us, that Mr. Day suffered "severe prejudice."[7] Accordingly, we conclude that on the record before us, the government's preindictment delay alone did not warrant dismissal under the Fifth Amendment to the Constitution. *Lovasco, supra,* 431 U.S. at 796, 97 S.Ct. at 2051–52.

### B. *Destruction of the Oldsmobile*

■ The government maintains that its failure to preserve the Oldsmobile from destruction did not violate Mr. Day's due process rights. Mr. Day insists that the destruction of the automobile substantially prejudices his ability to cross-examine the government's expert witness, and further, he "is unable to have his own automobile expert conduct an evaluation of the brakes and other mechanical systems of the automobile so as to furnish information to defense Counsel."

**4.** *Rochin* concerned a due process issue under the Fourteenth Amendment to the Constitution.

**5.** The record is silent as to how long the witness was hospitalized, and the specific steps the government took to locate witnesses to the accident.

**6.** An appellate court in Illinois stated in passing in *People v. Newberry,* 265 Ill.App.3d 688, 203 Ill.Dec. 70, 77, 638 N.E.2d 1196, 1203 (1994), "although the issue may not be presented in this case, it would appear to be a reasonable assumption that conduct amounting to 'gross negligence,' or a pattern of conscious indifference to the discovery rights of the defense could, in appropriate circumstances, be deemed to be tantamount to bad faith on the part of the State." A trial court in a New York County stated, "Whether or not [the government's] gross negligence was tantamount to bad faith depends upon the 'earnest efforts' made by the People to preserve vital evidence.… Certainly the more critical the evidence, the greater the duty to preserve. In the case at hand, the court finds that the People's gross negligence was tantamount to bad faith and the indictment should be dismissed." *People v. Fleishman,* 92 Misc.2d 156, 399 N.Y.S.2d 996, 998 (1977). We express no views on these various assertions.

**7.** The trial judge found only "actual prejudice."

The trial court relied on *Cotton v. United States*, 388 A.2d 865 (1978), in concluding that the Oldsmobile was of "paramount significance to this case and the Defendant's inability to inspect it constituted a significant prejudice." The government argues that *Cotton* is inapplicable to this case, and that under *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), Mr. Day's due process rights were not violated by the destruction of the Oldsmobile. To demonstrate significant prejudice, Mr. Day relies on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), to explain his inability to effectively cross-examine the government's potential witness who inspected the automobile and its brake system. All three of these cases pertain to the issue of whether Mr. Day has suffered actual prejudice due to the government's destruction of the Oldsmobile.

*Cotton, supra,* decided prior to *Youngblood*, involved the government's failure to preserve photographic array evidence from which the defendant had been identified. There, we reiterated that "(the government has) a duty to preserve, and the defendant has a right to discover," the photographic array evidence.[8] *Id.* at 869 (alteration in original). However, we found no substantial prejudice to the defendant · in *Cotton* after applying three factors:

> (1) the degree of [government] negligence or bad faith involved, (2) the importance of the evidence lost, and (3) the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice.

*Id.* We determined that "given the strength of the eyewitness identification ... the jury would not have reached a contrary verdict even had the photographic identification testimony been suppressed." *Id.* at 871. We

never intimated, however, that outright dismissal of an indictment with prejudice was one of the array of permissible sanctions for a discovery violation. The discussion of sanctions there was within the context of the appellant's argument that the judge should have struck testimony or at least given a variant of the missing witness instruction. *See* 388 A.2d at 869 & n. 7.

In *Youngblood, supra,* a case involving charges of child molestation, sexual assault and kidnapping, the government failed to preserve the victim's clothing through refrigeration, and did not test semen samples. Nonetheless, the Supreme Court held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58, 109 S.Ct. at 337. And in *Chambers, supra,* the Supreme Court recognized that "[t]he right of cross-examination ... is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.'" 410 U.S. at 295, 93 S.Ct. at 1046 (citations omitted).

Here, under *Youngblood*, we see nothing in the record to support a finding that the government's destruction of the Oldsmobile amounted to bad faith. In *Cantizano v. United States*, 614 A.2d 870 (D.C.1992), a police officer told a victim of an assault that she could throw away a paper towel used to wipe off a substance that the defendant had smeared on her face. We found no bad faith on the officer's part in failing to preserve the paper towel. Here, the Oldsmobile was destroyed after an officer mistakenly believed it was no longer needed for further investigation. Nothing in the record on appeal hints, even remotely, that the police destroyed the car so that Mr. Day could not examine it, or

---

**8.** We make no determination at this stage of the proceedings against Mr. Day as to what sanctions the trial court may properly impose against the government, other than dismissal, under Super. Ct.Crim. R. 16 pertaining to the disclosure of evidence. Rule 16(d)(2) provides in pertinent part:

> Failure to comply with a request. If at any time during the course of the proceedings it is brought to the attention of the Court that a party has failed to comply with this Rule, the

> Court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other orders as it deems just under the circumstances.

Nor do we make any determination as to what may or may not constitute appropriate evidentiary rulings during trial relating to the automobile and its inspection by the government's potential witness.

have it viewed by an expert.[9] Thus, under *Youngblood,* we see no evidence of bad faith on the government's part in destroying the Oldsmobile.[10]

With respect to the *Cotton* factors, the trial court found gross governmental negligence, not bad faith, in the failure to preserve the Oldsmobile, which the trial court considered to be of "paramount significance" in Mr. Day's case. We agree with the government that *Cotton* does not control the outcome of this case, but disagree with the government's suggestion that *Cotton* has been "superseded by *Youngblood,*" and that its "remaining vitality" is at least questionable. *Cotton* did not concern due process dismissals. It still retains vitality in regard to sanctions short of terminating a prosecution. As to whether dismissal is appropriate, it is *Youngblood* that controls.

Thus, because the government did not destroy the Oldsmobile in bad faith, and because some evidence probative of guilt existed at the indictment stage of the criminal process, "the ends of justice" would not be served by the dismissal of the indictment against Mr. Day. In short, the defendant has the burden of showing a constitutional violation, and on the record before us, we find no violation of Mr. Day's Fifth or Sixth Amendment rights during the preindictment period.[11] Accordingly, we reverse the trial court's dismissal of the indictment against Mr. Day, and remand the case to the trial court for trial.

*Reversed and remanded.*

---

9. Mr. Day argues that *Cantizano* is different from his case because, here, he owned the item that was destroyed. For purpose of determining bad faith in the context of the preservation of evidence, we do not regard ownership as a meaningful factor on the record before us.

10. Mr. Day attempts to distinguish *Youngblood* on the ground that the evidence there was described only as "potentially useful" whereas the trial court here found the Oldsmobile to be of "paramount significance." We deem it premature to determine whether the Oldsmobile is of "paramount significance" or crucial to the trial of Mr. Day for negligent homicide. That issue may arise in connection with a motion to impose sanctions short of dismissal of the indictment.

11. The record before us reveals no testimony by Mr. Day, and the presentation of no witnesses in behalf of his motion to dismiss. The government presented the testimony of two police officers, one of whom was a mechanic who inspected the Oldsmobile and its brake system.