**UNITED STATES of America**

v.

**David FINNERTY, Defendant.**

**United States of America**

v.

**Thomas J. Murphy, Jr., Defendant.**

**Nos. 05CR393(DC), 05CR397(DC).**

United States District Court,
S.D. New York.

Jan. 27, 2006.

Michael J. Garcia, United States Attorney for the Southern District of New York by Lauren Goldberg, Esq., Anthony Barkow, Esq., Assistant United States Attorneys, New York City, for the United States.

Hafetz & Necheles by Frederick P. Hafetz, Esq., New York City, for Defendant David Finnerty.

Morvillo, Abramowitz, Grand, Iason, & Silberberg by Robert G. Morvillo, Esq., Gregory Morvillo, Esq., New York City, for Defendant Thomas J. Murphy, Jr.

## MEMORANDUM DECISION

CHIN, District Judge.

Defendants David Finnerty and Thomas J. Murphy, Jr., move for an order compelling discovery pursuant to Federal Rule of Criminal Procedure 16. For the reasons that follow, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

### A. *The Facts*

The facts, as alleged in the Indictments, 05 Cr. 393 and 05 Cr. 397, are as follows:

Finnerty and Murphy were employed by Fleet Specialist, Inc., as New York Stock Exchange ("NYSE") specialists from about 1996 and 1993, respectively, and during all times relevant to the Indictments. (Finnerty Indict. ¶ 2; Murphy Indict. ¶ 2). With limited exceptions, purchases and sales of securities on the NYSE must be executed through a specialist who works on the floor of the exchange. (Finnerty Indict. ¶ 3; Murphy Indict. ¶ 3). To effectuate purchases and sales of particular securities, buyers and sellers had to first present their bids to buy, or offers to sell, to the specialist assigned to that security. (*Id.*).

Orders to purchase or sell could be presented to a specialist in one of two ways. First, the order could be conveyed orally by a floor broker on the floor of the exchange at the specialist's post. (*Id.*). Second, an order could be transmitted to the specialist electronically using the NYSE's "Super Designated Order Turnaround System." Orders transmitted this way would appear on a computer screen that was referred to as the "display book." (*Id.*).

After receiving the order, a specialist could fill it in one of two ways. A specialist was generally required by rules of the Securities and Exchange Commission ("SEC") and the NYSE to match any open

buy orders from one investor with any open sell orders from another investor. (Finnerty Indict. ¶ 4; Murphy Indict. ¶ 4). These are referred to as "agency" or "broker" orders because the specialist is simply acting as an agent that matches orders of willing buyers and sellers. (*Id.*). In certain limited circumstances, however, specialists were permitted to execute trades on a "principal" or "dealer" basis, when required to do so to maintain a fair and orderly market. (Finnerty Indict. ¶ 5; Murphy Indict. ¶ 5). For example, if there were no matching buy and sell orders in a given price range at a given time, specialists were authorized to execute a purchase or sale by selling stock from the specialist's proprietary account, or by buying stock and holding it in that account. (*Id.*).

In addition to executing purchase and sale orders, specialists were responsible for reporting to the public the prices at which stocks were being bought and sold. (Finnerty Indict. ¶ 6; Murphy Indict. ¶ 6). Because of their position, specialists had access to certain material information— such as advance knowledge of the price parameters of all open orders—and accordingly were subject to certain rules and obligations to prevent them from taking unfair advantage of investors. (*Id.*). Pursuant to NYSE Rule 104, specialists were under an affirmative obligation to buy or sell stock on a principal or dealer basis when necessary to maintain a "fair and orderly" market, e.g., to minimize any actual or anticipated short-term imbalance between supply and demand. (Finnerty Indict. ¶ 8; Murphy Indict. ¶ 8). Similarly, specialists were subject to a negative obligation to refrain from purchasing or selling securities on a principal or dealer basis when not necessary to maintain a fair and orderly market. (Finnerty Indict. ¶ 9; Murphy Indict. ¶ 9). This negative obligation generally precluded specialists from executing trades on a principal or dealer basis when there were matching public orders to buy and sell. (*Id.*). In other words, specialists were prohibited from "trading ahead" or "interpositioning"— trading on their own accounts ahead of or between existing investor orders.[1] (*Id.*).

The Indictments allege that Finnerty and Murphy engaged in a scheme of trading ahead and interpositioning that resulted in purchasing and selling securities for their proprietary accounts at advantageous prices, to the detriment of the investing public. Because their compensation was based in part on the profitability of their proprietary accounts, each stood to benefit financially from the alleged scheme. (Finnerty Indict. ¶ 15; Murphy Indict. ¶ 15). Finnerty is alleged to have engaged in more than 40,000 instances of interpositioning and trading ahead, and Murphy more than 9,000. (Finnerty Indict. ¶ 16; Murphy Indict. ¶ 16). The Indictments allege that this conduct violated 15 U.S.C. § 78j(b) (otherwise known as Section 10(b)).

## B. *The Pending Motion*

On October 24, 2005, Finnerty and Murphy jointly moved for an order to compel the production of a range of documents under *Brady* and Rule 16. The Court heard oral argument on December 13, 2005, and the parties advised the Court that they had resolved several issues, and

---

1. "Trading ahead" occurs when a specialist trades on his own proprietary account ahead of and instead of matching existing buy and sell orders, thus securing an advantageous price for his own account. "Interpositioning" is when the specialist trades on his proprietary account between orders; i.e., instead of matching a suitable buy and sell order, he fulfills the sell order by purchasing for his own account, then fulfills the buy order by selling from his account, with the objective being to make a profit based on a discrepancy between the sale prices. (*See* Finnerty Indict. ¶¶ 12–13; Murphy Indict. ¶¶ 12–13).

that disagreements remained as to only two narrow categories of documents that defendants are seeking under Rule 16:(1) a report by the SEC Office of Compliance Inspection and Examination ("OCIE"), along with related documents, and (2) documents relating to an NYSE internal study and investigation on trading ahead violations. (*See* Tr. 10:21–22; 15:7–9; 20:19–24).[2] As to the first, the Government admits that the report is within its possession, custody, or control, but contends that it is not material to the defense. As to the second, the Government argues that the documents are in the possession, custody, or control of the NYSE, not the Government, and accordingly do not fall with the disclosure obligations of Rule 16.

### DISCUSSION

Rule 16(a)(1)(E) provides that,

[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

Fed.R.Crim.P. 16(a)(1)(E). As noted, the Government contends that it need not disclose the OCIE report because it is not material to the defense. The Government further contends that it need not produce the NYSE documents because they are not within the Government's possession, custody, or control. I address each issue in turn.

### A. *The OCIE Report*

 A document is material under Rule 16 if it "could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of the Rule merely because the government may be able to use it to rebut a defense position." *United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir. 1993) (internal citations omitted). Put another way, a document is material if its "pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor." *United States v. Giffen,* 379 F.Supp.2d 337, 342 (S.D.N.Y.2004) (citations omitted). Conclusory allegations are insufficient, however, to establish materiality, *id.,* and the burden is on the defendants to make a prima facie showing that the documents sought are material to preparation of the defense. *United States v. McGuinness,* 764 F.Supp. 888, 894 (S.D.N.Y.1991).

The OCIE report relates to an SEC investigation "to evaluate the effectiveness of the NYSE's program for monitoring specialist trading and its disciplinary program related to specialists' violations of [various NYSE Rules.]" (Gov't Br. at 26). By way of background, the parties contend that one of the issues at trial will be whether defendants knew that they were interpositioning or trading ahead of existing investor orders. Because one of the ways that specialists received orders was on their computer screens, the Government intends to argue at trial that there is strong evidence of knowledge if a given order was on defendants' respective screens for more than ten seconds, if defendants traded ahead or interpositioned after that ten-second period. (*See* Tr. at 26–27). As defendants point out, the OCIE report apparently recounts that the

---

**2.** References to "Tr." are to the transcript of the December 13, 2005, oral argument.

# 432

NYSE's own internal investigation used a sixty-second time parameter, instead of a ten-second one. In the course of its *Brady* disclosures, the Government wrote to defendants that

> during the course of a 2003 inspection of the [NYSE] conducted by the [OCIE], certain NYSE officials expressed, in substance, the opinion that a significant reduction in the surveillance's time parameter below sixty seconds would result in numerous false positive alerts.

(Def. Reply Br. at 8) (quoting Nov. 2, 2005, letter from AUSA Goldberg).

█ The Government contends that the OCIE report is not material because the investigation was conducted after the relevant period in the Indictment and, in any event, the adequacy (or lack thereof) of the NYSE's monitoring and supervision is not an issue in this case.

I am not persuaded. If, as defendants argue, the Government intends to argue at trial that a ten-second cutoff is strong evidence of intent—and the Government did not dispute this at oral argument—then an SEC-generated report that indicates that anything below a sixty-second cutoff would create a high number of false positives tends to counter the Government's case and bolster the defense. Defendants have therefore met their burden of a prima facie showing of materiality, and, because the report is also in the Government's possession, custody, or control, it must be produced, along with any NYSE response to the report and any memoranda or correspondence relating to it that are also in the possession, custody, or control of the Government.

## B. *The NYSE Documents*

Defendants seek the production of documents currently in the possession of the NYSE relating to an NYSE internal study and investigation on trading ahead violations. (Tr. 20:19–21 ("The second part of this ... is the New York Stock Exchange internal study and investigation material.")). The defense, relying primarily on *United States v. Giffen*, 379 F.Supp.2d 337 (S.D.N.Y.2004), argues that the Government must produce documents within the possession of the NYSE if it has "access" to them. (Def. Reply Br. at 6). The Government counters that documents in the possession of the NYSE—a private entity—are not in the possession, custody, or control of the Government, and that they therefore need not be produced by the Government under Rule 16 unless the NYSE is conducting a "joint investigation" with the Government.

Courts have typically required the prosecution to disclose under Rule 16 documents material to the defense that (1) it has actually reviewed, or (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the prosecution team. *See United States v. Chalmers*, 410 F.Supp.2d 278, 290, 2006 WL 172254, at *9 (S.D.N.Y. Jan. 25, 2006); *see also United States v. Volpe*, 42 F.Supp.2d 204, 221 (E.D.N.Y.1999) ("Courts have construed the term 'government' in this rule narrowly to mean the prosecutors in the particular case or the *governmental agencies jointly involved in the prosecution* of the defendant, and not the 'government' in general.") (emphasis added); *United States v. Holihan*, 236 F.Supp.2d 255, 260 (W.D.N.Y.2002) ("[T]he prosecution alone is responsible for ensuring that Defendant is provided with information discoverable under Rule 16, including information that is in possession of *other government agencies participating in the investigation*.") (emphasis added); *United States v. Upton*, 856 F.Supp. 727, 749–50 (E.D.N.Y.1994) ("The key to the analysis ... is the level of involvement between the United States Attorney's Office and the other agen-

cies.... The inquiry is not whether the United States Attorney's Office physically possesses the discovery material; the inquiry is the extent to which there was a *'joint investigation' with another agency."*) (emphasis added).

■ The Government has made the representation that it has not actually reviewed the requested documents (*see* Tr. 28:11–12 ("we don't have any of these and we haven't seen them")), and the Court accepts the representation. The question, then, is whether the NYSE can be considered a government agency involved in a joint investigation with the prosecution. I conclude the answer is no.

First, the proposition that the NYSE is a government agency is dubious at best. As the Second Circuit has explained (in the context of finding that the National Association of Securities Dealers ("NASD") is not a "state actor" for purposes of a constitutional claim against it):

> The NASD is a private actor, not a state actor. It is a private corporation that receives no federal or state funding. Its creation was not mandated by statute, nor does the government appoint its members or serve on any NASD board or committee. Moreover, the fact that a business entity is subject to "extensive and detailed" state regulation does not convert that organization's actions into those of the state. *Indeed, we have already ruled that the New York Stock Exchange—a self-regulatory private organization like the NASD—is not a state actor.*

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 206 (2d Cir.1999) (citations omitted) (emphasis added).

Second, even assuming that the NYSE could be considered a government agency for purposes of Rule 16, I am not persuaded that there is or was a joint investigation involving the Government and the NYSE here. The documents that defendants seek are undisputedly the product of an investigation that was undertaken by the NYSE of its own practices, and there is no suggestion that the Government participated in that investigation. (*See* Def. Br. at 30) (stating that "the NYSE conducted an investigation"); Def. Reply Br. at 11 (referring to "the NYSE's investigative findings"); *see also* Tr. 20:19–20 (defense counsel referring to "the New York Stock Exchange internal study and investigation"). Nor am I persuaded that the Government's current investigation and prosecution have been undertaken jointly with the NYSE. The mere fact that the Government may have requested and received documents from the NYSE in the course of its investigation does not convert the investigation into a joint one; indeed, at oral argument the Government represented that there have been occasions on which it has requested materials from the NYSE and been denied. (*See* Tr. 30:5–7) ("THE COURT: Has the Stock Exchange ever said no you to when you've asked for something? MR. BARKOW: Yes, your Honor, they have.").[3]

---

**3.** Moreover, even assuming the NYSE could be considered a government agency, that fact alone would not impose an obligation on the part of the U.S. Attorney's office to affirmatively obtain documents from the NYSE, absent a joint investigation. Although the Second Circuit has not defined the precise contours of what constitutes the "government" for Rule 16 purposes, in the context of *Brady* cases it has expressed the concern that the imposition of a duty on the prosecution to inquire of different offices of the government would be to adopt a "monolithic view of government" that would "condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino,* 136 F.3d 249, 255 (2d Cir.1998). This concern applies with equal force in the Rule 16 context. *See Chalmers,* at 289, 2006 WL 172254, at *9.

Third, defendants rely principally on *Giffen*, but that case does not suggest a different result. In *Giffen*, the defense sought production of documents from the Central Intelligence Agency and National Security Council that the prosecution had reviewed in the course of its investigation. 379 F.Supp.2d at 341. The court explained that a prosecutor "is not 'allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial.'" *Id.* at 342–43 (quoting *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977)). It therefore held that "[d]ocuments that the Government has reviewed or has access to must be provided to aid a defendant in preparing his defense." *Id.* (citing *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir.1995); *United States v. Zuno–Arce*, 44 F.3d 1420, 1427 (9th Cir.1995)). Although the court's use of "access to" language arguably espouses a broader view than the requirement of a "joint investigation," the court in *Giffen* ultimately held only that the prosecution was required to disclose CIA and Department of State documents that it had actually reviewed. 379 F.Supp.2d at 343 ("The Government acknowledges that it reviewed documents relating to Giffen ... at the CIA and Department of State during the course of its investigation. Giffen is entitled to review those classified documents to assess the viability of a public authority defense."). As explained above, the current defense motion is distinguishable in that it seeks documents that the Government has not actually reviewed.

Defendants' motion for production of documents in the possession of the NYSE is therefore denied. Defendants may subpoena the documents before trial pursuant to Federal Rule of Criminal Procedure 17. The application by the defense to issue the subpoena returnable before trial pursuant to Rule 17(c) is granted.

## CONCLUSION

Accordingly, defendants' motion is granted to the extent it seeks the OCIE report and related documents already in the possession of the Government. It is denied to the extent it seeks documents related to the NYSE investigation in the possession of the NYSE that are not already in the Government's possession.

SO ORDERED.