**Regina J. MYERS, Appellant**

v.

**UNITED STATES, Appellee.**

No. 08–CM–1560.

District of Columbia Court of Appeals.

Submitted Dec. 15, 2009.

Decided Feb. 24, 2011.

———

Brigitte L. Adams, appointed by the court, was on the brief, for appellant.

Channing D. Phillips, United States Attorney at the time the brief was filed, and Roy W. McLeese, III, John P. Mannarino, and Patricia A. Heffernan, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER, Associate Judge, and BELSON and TERRY, Senior Judges.

TERRY, Senior Judge:

After a non-jury trial, appellant was convicted of assault. On appeal from that conviction, she argues that the government's failure to provide her with a digital video recording from the bus on which the assault took place constituted a discovery violation. Her assertion is that because the bus was owned and operated by the Washington Metropolitan Area Transit Authority ("WMATA" or "Metro"), a government agency, the recording was therefore in the possession of the government and the prosecution was required to preserve and produce it. We disagree and accordingly affirm the conviction.

I

Patricia Doby testified that on July 19, 2008, at approximately 2:00 p.m., she boarded an X2 Metro bus in Northeast Washington and took a seat near the front of the bus, two seats behind the driver. Appellant, who was sitting three seats away, was cursing out loud at no one in particular and "talking about men fucking women, women fucking women, and all that." When Ms. Doby said to her, "Can you please stop? There are kids on the bus," appellant stood up and withdrew a large knife from her purse. Appellant approached "really close" to Ms. Doby with the knife and said, "Who the fuck are you talking to, bitch?" Ms. Doby replied, "Why are you talking to me like that? I didn't disrespect you; you disrespected

me. Why are you disrespecting me?" A man who had been sitting at the back of the bus approached the two women, stepped between them, and told Ms. Doby that she should get off of the bus. Ms. Doby alighted when the bus stopped at the Hechinger Mall on Benning Road. Appellant also got off the bus and began to walk away. Ms. Doby, meanwhile, saw a police car driving through the mall parking lot. She flagged it down, told Officer Jorge Marcucci what had happened on the bus, and pointed to appellant. The bus driver also reported the incident to the officer, as did two other passengers who had alighted with Ms. Doby. Ms. Doby and the two other passengers then reboarded the bus, and it resumed its journey.

Officer Marcucci testified that a bus driver flagged him down while he was driving his police cruiser through the Hechinger Mall parking lot. The driver informed him that appellant had threatened one of the passengers in the bus and tried to cut her with a knife. After hearing the reports of the bus driver, Ms. Doby, and the other two passengers, Officer Marcucci "went after" appellant and brought her back to his cruiser. He told her that she was not under arrest but was being "detained until I could solve what's going on."[1] He described appellant as "loud, boisterous," and "highly intoxicated."[2] After other officers arrived in response to his call for backup assistance, Officer Marcucci left appellant with them, then got into his car and followed the bus. He caught up with it a few blocks way, stopped it, and brought Ms. Doby back to the mall parking lot, where she identified appellant once again. Officer Marcucci then formally placed appellant under arrest. One of the other officers searched

appellant's purse and found a knife in it, which he seized.

Appellant testified in her own defense. She said that she had been on the bus on July 19, but that she had drunk only one beer about two hours earlier and was not intoxicated. She denied using any vulgar or obscene language on the bus and denied threatening anyone with a knife. She admitted, however, that she had a knife in her purse, which she had allowed the officers to remove. Finally, she said that she had not seen Ms. Doby on the day of her arrest or at any time before the trial.

About three weeks before trial, appellant filed a motion to compel the government to produce any video or audio recording that might have been made on the bus during the incident. When the prosecutor informed the court at the beginning of the trial that there was a digital video recorder on the bus, but that the video was erased after eighty hours pursuant to established WMATA policy, defense counsel moved for the case to be dismissed. Counsel argued that the government had violated Rule 16 of the Superior Court Rules of Criminal Procedure by failing to preserve the video which was made on the bus during the incident. The trial court reserved ruling on the motion to dismiss until after the conclusion of the defense case, at which point the court denied the motion. It found that while the recording was material to appellant's defense, it was not in the possession of the government, and therefore its production was not required under Rule 16.

The court also found appellant guilty of assault and sentenced her to ten days in jail. Execution of that sentence was suspended, and appellant was placed on pro-

---

1. The officer initially placed handcuffs on appellant but removed them after telling her that she was "not under arrest."

2. Ms. Doby had also testified that appellant smelled and acted as if she had been drinking.

bation for six months. The court further ordered appellant to pay $50 to the Victims of Violent Crime Compensation Fund. This appeal followed.

## II

Appellant argues that the maintenance of WMATA's surveillance and recording system, intended to ensure the safety of passengers on its buses, is a governmental function, and consequently the government has an obligation to preserve and disclose recordings that disclose or involve any criminal activity that occurs on a Metro bus. She contends that the government violated Criminal Rule 16 when it neglected to preserve the video recording and provide it to her upon request.

In the District of Columbia, the duty to preserve discoverable evidence dates back at least forty years, to the leading case of *United States v. Bryant*, 142 U.S.App. D.C. 132, 439 F.2d 642 (1971).[3] In *Bryant* the court held that certain tape recordings which had been made by an agent of the Bureau of Narcotics and Dangerous Drugs—and had somehow been "lost" after they were made and had never been turned over to the prosecutor—were in the "possession" of the government for the purposes of Rule 16, the Jencks Act,[4] and *Brady v. Maryland*.[5] Most importantly, the court also held that the Rule 16 duty to disclose includes an obligation to preserve vital evidence within the government's possession before prosecution begins. *See id.*

at 140–141, 439 F.2d at 650–651; *accord, e.g., Allen v. United States*, 649 A.2d 548, 553 (D.C.1994) ("[t]he duty to produce discoverable evidence entails the antecedent duty to preserve that evidence"). In this case the government does not dispute that the video recording was material to the preparation of appellant's defense; therefore, the only issue before us is whether the recording was ever within the government's possession. If it was not, there can be no Rule 16 violation. *See Guest v. United States*, 867 A.2d 208, 212 (D.C. 2005) ("[i]f the government does not possess the requested information, there can be no *Brady* violation"); *Velasquez v. United States*, 801 A.2d 72, 81 (D.C.2002) ("there is no due process violation since the records were not in the possession of the government").[6]

Rule 16 provides that, upon the request of the defendant, the government must "permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, *which are within the possession, custody, or control of the government*, and which are material to the preparation of the defendant's defense...." (Emphasis added.) We have held that the duty of disclosure applies not only to the prosecutor's office, but also to all other investigative agencies of the government. *See, e.g., Robinson v. United States*, 825 A.2d 318, 326 (D.C.2003); *accord, Bryant*, 142 U.S.App. D.C. at 140,

---

**3.** Because it was decided by the United States Court of Appeals prior to February 1, 1971, the effective date of the District of Columbia Court Reorganization Act, the *Bryant* case is binding on this court. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

**4.** 18 U.S.C. § 3500.

**5.** 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**6.** Both *Guest* and *Velasquez* involved claims arising under *Brady v. Maryland*. The rationale of those cases, however, applies with equal force to requests for production of documents or other items of evidence under Rule 16 or the Jencks Act. *See Bryant*, 142 U.S.App. D.C. at 140–141, 439 F.2d at 650–651 (treating Rule 16, the Jencks Act, and *Brady v. Maryland* as imposing the same duty of disclosure).

439 F.2d at 650 ("[t]he duty of disclosure affects not only the prosecutor, but the Government as a whole, including its investigative agencies"). Thus we must determine whether possession of the video recording in this case by the Washington Metropolitan Area Transit Authority constitutes "possession" by an "investigative agency" within the meaning of *Robinson*, *Bryant*, and similar cases. Stated another way, we must decide whether, on the facts of this case, WMATA can be deemed a member of what we have called "the prosecution team," *Robinson*, 825 A.2d at 328, subject to the duty of preservation and disclosure imposed by the *Bryant* line of cases.

WMATA was created by an interstate compact among Maryland, Virginia, and the District of Columbia to provide the Washington Metropolitan Area with public transit service. *See Morris v. WMATA*, 251 U.S.App. D.C. 42, 43, 781 F.2d 218, 219 (1986). Each of the three jurisdictions funds a portion of WMATA's operations and appoints representatives to serve on its board of directors. WMATA Compact, §§ 5, 16, 17.[7] WMATA has its own police force, the Metro Transit Police, which, while on Metro property in the District of Columbia, has the same powers as the Metropolitan Police Department of the District of Columbia. *Id.*, § 76.

▆ This court, in previous decisions pertaining to tort liability, has held that WMATA's operations are bifurcated, involving both governmental and proprietary functions. The distinction is important for tort liability purposes because WMATA is immune from suit when its actions are governmental but not when they are proprietary. *See, e.g., McKethean v. WMATA*, 588 A.2d 708 (D.C.1991); *Hall v. WMATA*, 468 A.2d 970 (D.C.1983); *Qasim v. WMATA*, 455 A.2d 904 (D.C.1983) (en banc).[8]

The tort liability distinction between governmental and proprietary functions is a helpful starting point for our discussion, but it does not fully resolve the issue presented here. In *Morris v. WMATA*, the District of Columbia Circuit held that the WMATA function is governmental in nature when the Metro Transit Police are involved. 251 U.S.App. D.C. 42, 44, 781 F.2d 218, 220. Thus a case could arise involving a WMATA function normally proprietary in nature (*e.g.*, operating the local bus system), but in which the Metro Transit Police are sufficiently involved in the prosecution or investigation of a criminal offense so that, for discovery purposes, the function may be deemed "governmental." That was the situation in *Wilson*, *supra*, note 8, in which the tape recording might have been part of the proprietary function of WMATA, but for its use in obtaining police assistance and WMATA's involvement in investigating the case. We said there that the government cannot compartmentalize WMATA, enjoying the assistance of the Metro Transit Police in conducting a criminal investigation but denying the defendant access to WMATA

---

**7.** The WMATA Compact is incorporated into the text of D.C.Code § 9–1107.01 (2001).

**8.** In ruling on appellant's motion, the trial court relied on *Wilson v. United States*, 568 A.2d 817 (D.C.1990), *vacated as moot*, 592 A.2d 480 (D.C.1991), in which we held that a tape recording of a call made by a bus driver to his supervisor was in the possession of the government because it involved WMATA's performance of governmental functions; the call was the means by which the driver sought supervisory and police assistance, and WMATA investigated the case for the prosecution. Because it was vacated, the *Wilson* decision is no longer a binding precedent. *See White v. Hyman*, 647 A.2d 1175, 1181 n. 9 (D.C.1994). Nevertheless, it does provide some useful guidance here.

radio transmissions. *See Wilson,* 568 A.2d at 821.

The situation in the instant case is different. Here WMATA acted in a manner that was fundamentally proprietary. The Metro Transit Police were never involved in this case at any time. An officer from the Metropolitan Police—the local police department of the District of Columbia government—was summoned to the scene, where he conducted an investigation and arrested appellant. Thereafter, the United States Attorney's Office handled the investigation and prosecution of the case. See D.C.Code § 23–101(c) (2001). The mere installation and maintenance by WMATA of a video recording device, the purpose of which was to ensure the safety of its bus passengers, was not a governmental function which would make WMATA a member of "the prosecution team." *Robinson,* 825 A.2d at 328. Since there was no other showing of involvement by the Metro Transit Police at any time in the investigation or prosecution of this case, we hold that WMATA was not a member of the prosecution team, and thus the video recording—made by WMATA for a purpose unrelated to this case—was never in the "possession" of the government within the meaning of Rule 16.

Appellant's conviction is therefore

*Affirmed.*