*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-234

ANDREW L. WEEMS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-17718-14)

(Hon. Ann O'Regan Keary, Trial Judge)

(Submitted: September 29, 2016[*]   Decided: August 9, 2018)

*Ariel Roytenberg*, Student Attorney (No. 14465), and *Moses Cook*, Supervising Attorney, were on the initial brief for appellant. *Samantha Montalbano*, Student Attorney (No. 15869), and *Michael Barfield*, Supervising Attorney, were on the supplemental brief for appellant.

*Channing D. Phillips*, United States Attorney at the time, and *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Marco A. Palmieri*, Assistant United States Attorneys, were on the initial brief for appellee. *Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman*, *Nicholas P. Coleman*, and *Eric Hansford*, Assistant United States Attorneys, were on the supplemental brief for appellee.

---

[*] After the submission date, this court requested supplemental briefing from the parties. The supplemental briefing was completed on February 5, 2018.

Before GLICKMAN and EASTERLY, *Associate Judges*, and PRYOR, *Senior Judge*.

Opinion for the court by *Associate Judge* GLICKMAN.

Concurring opinion by *Associate Judge* EASTERLY at page 25.

GLICKMAN, *Associate Judge*:  Andrew Weems appeals his convictions after a bench trial of shoplifting and attempted threats to do bodily harm.  He contends the trial judge erred by (1) not sanctioning the government for its failure to preserve and produce discoverable evidence; and (2) permitting the government to amend the information before trial to reduce the threats charges against him and thereby eliminate his statutory entitlement to a trial by jury.  We reject appellant's claims of error and affirm his convictions.

## I.

Appellant was arrested inside a Wal-Mart store in Northwest Washington, D.C., on the evening of October 6, 2014.  Reginald Bryant, a Wal-Mart employee and a manager in the store's Asset Protection section, testified at trial that he was "walking the floor" at around 6:30 p.m. when he observed appellant collect four watches from their display shelves in the jewelry department and take them over to the bedding department.  Bryant followed appellant there and saw him kneel down in the aisle and remove the security sensor tags attached to each watch by biting

them off with his teeth. Appellant put the tags and watch packaging on a shelf, pocketed the watches, and returned to the jewelry aisle to take five more watches. Bryant contacted Danielle Davis, another Wal-Mart employee working in Asset Protection, who was monitoring the store's video camera surveillance system. He also contacted Medgar Webster, a Metropolitan Police Officer who was off-duty but in the store providing uniformed security for Wal-Mart at the time.

Officer Webster testified that he went to the Asset Protection office. There, with Bryant and Davis, he viewed appellant on a video monitor. Officer Webster then went back to the floor with Bryant to confront appellant in person. They found appellant back in the bedding aisle biting the security tags off the additional watches he had taken and concealing the watches in his pants pocket. Officer Webster arrested appellant for shoplifting, escorted him to the Asset Protection office, and confiscated the watches from him.

While sitting handcuffed in the office, appellant became visibly agitated and angry. Addressing Bryant and Davis, he declared, "If I go to jail for this [expletive deleted] misdemeanor I'm going to come back up here and . . . I'm going to bring the noise. . . . I know your faces, . . . you too, [expletive deleted]. . . . [O]nce I get out of jail I'm going to come back up [expletive deleted] and get both of you

[expletive deleted]." These remarks were the basis for the threats charges against appellant.

Officer Webster did not retain custody of the watches after taking them from appellant. Instead, he handed the watches over to Wal-Mart's Asset Protection personnel. The record does not reveal what happened to the watches after that.[1] Nor did Officer Webster collect the security tags or attempt to obtain or preserve a copy of the video surveillance footage showing appellant's actions.[2] It is not clear whether the security tags ever were recovered,[3] and Wal-Mart later advised the government and appellant's counsel that any recorded footage of the incident had been lost in a hard drive crash in December 2014. Consequently, the government

---

[1] Reginald Bryant testified that he prepared a "training receipt" that identified and described the nine watches recovered from appellant's pants pocket. The government produced this receipt in pretrial discovery, and it was admitted in evidence at trial.

[2] Officer Webster understood that Wal-Mart recorded the surveillance videos in similar cases, though he could not say whether a recording actually was made in this case.

[3] Bryant testified only that the tags were attached to the boxes from which appellant had removed the watches, and that those boxes "were recovered from the shelf and taken back to Claims because if you don't do that then we'll lose money from the watches."

did not produce the watches, security tags, or video footage to appellant in pretrial discovery, and it did not introduce any of that evidence at trial.

Contending that the government had violated its obligations under Superior Court Criminal Rule 16 by failing to preserve the watches, tags, and video surveillance footage for pretrial discovery, appellant moved for dismissal of the information or an appropriate lesser sanction.[4] The trial judge denied this motion, ruling that (1) the government had not violated Rule 16 because Officer Webster never took possession of the evidence, and that (2) it would be inappropriate to sanction the government for its failure to secure the watches, tags, and surveillance footage because (a) there was no showing of bad faith but only, at worst, negligence on Officer Webster's part, and (b) appellant was not prejudiced by the absence of the evidence.

**II.**

We review the judge's discovery rulings for abuse of discretion, subject to the qualification that the proper construction of Criminal Rule 16 is a legal

---

[4] The only alternative to dismissal that appellant proposed was that the judge sanction the government for its failure to collect and produce the security tags by striking the testimony about the tags.

question as to which our review is *de novo*.[5]  Because Rule 16 derives from and mirrors the corresponding rule in the Federal Rules of Criminal Procedure, we may look for guidance to cases construing that rule.[6]

Rule 16 imposes disclosure obligations on "the government."  We have said that these duties apply "not only to the prosecutor's office, but also to all other investigative agencies of the government" in whose name the prosecution is brought – in other words, to the entire "prosecution team."[7]  The present case involves what is now Rule 16 (a)(1)(E),[8] which entitles a criminal defendant to inspect and copy evidence "within the government's possession, custody, or control" if the item is material to the preparation of the defense, if the government intends to use the item in its case-in-chief at trial, or if the item was obtained from or belongs to the defendant.  This Rule 16 duty to permit pretrial discovery entails

---

[5]  *Watson v. United States*, 43 A.3d 276, 283 (D.C. 2012).

[6]  *See Davis v. United States*, 623 A.2d 601, 605 n.12 (D.C. 1993) (citing *Waldron v. United States*, 370 A.2d 1372, 1373 (D.C. 1977)).

[7]  *Myers v. United States*, 15 A.3d 688, 690-91 (D.C. 2011); *see also Robinson v. United States*, 825 A.2d 318, 326-27 (D.C. 2003).

[8]  At the time of appellant's trial, the provision at issue was in paragraph (C) of Rule 16 (a)(1).  It was moved to paragraph (E) when the Rule was amended in 2016.  The amendment made no substantive change to the Rule.  *See* Super. Ct. Rule Promulgation Order 16-01 (dated March 10, 2016, effective April 11, 2016).

an antecedent duty to preserve material that the government has obtained and knows or should know is discoverable.[9] However, these duties of preservation and disclosure extend only to evidence that actually is within the possession, custody, or control of the government; they do not presuppose any duty on the part of the government to acquire evidence it does not have from private parties or other outside sources.[10] If the evidence at issue was never within the government's

---

[9] *See Koonce v. District of Columbia*, 111 A.3d 1009, 1013 (D.C. 2015) ("We have repeatedly recognized that the government has a general duty to preserve discoverable evidence under Superior Court Criminal Rule 16 (a)(1)(C) and long-established case law.") (punctuation and citations omitted); *id.* at 1017 ("[W]hether there is an obligation to preserve evidence depends on a reasonable expectation that it will fall within the scope of evidence that is discoverable[.]") (citation omitted); *see also, e.g.*, *Williams v. United States*, 77 A.3d 425, 437 (D.C. 2013); *Myers*, 15 A.3d at 690; *Robinson*, 825 A.2d at 327-28.

[10] *See, e.g.*, *Nelson v. United States*, 649 A.2d 301, 308 (D.C. 1994) (no obligation under Rule 16 to produce hospital records that were "not in possession of the prosecutorial arm of the federal government, nor in the possession of the government at all"); *see also Myers*, 15 A.3d at 690-92 (holding that video recording made and kept by WMATA was never in the possession of the government for purposes of Rule 16 and therefore was not subject to the Rule's requirements); *United States v. Neal*, 512 F.3d 427, 436 (7th Cir. 2008) (holding that Rule 16 of the Federal Rules of Criminal Procedure imposes no duty on federal prosecutors to obtain evidence that "was not in the hands" of any federal authority, but rather was in the possession of state police, "even if the prosecution is aware of the items") (quoting *United States v. Hamilton*, 107 F.3d 499, 509 n.5 (7th Cir. 1997)); *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1375 (9th Cir. 1987) ("[T]he federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control.").

possession, custody, or control, "there can be no Rule 16 violation" in the government's failure to preserve and produce it.[11]

Thus the threshold and, as it turns out, largely dispositive issue in this case is whether the government acquired "possession, custody, or control" of the watches, security tags, or surveillance video footage. As used in Rule 16, the words "possession," "custody," and "control" have overlapping but different meanings. We agree with appellant that the terms refer to three "forms of dominion."[12]

The first term in the triad is "possession." For the sake of clarity, and to distinguish it from the other two terms, we may understand "possession" in Rule 16 cases to refer to "actual possession" – "direct physical control over a thing."[13]

---

[11] *Myers*, 15 A.3d at 690; *see also, e.g.*, *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) ("[T]he government cannot be required to disclose evidence that it neither possesses nor controls.").

[12] Supplemental Brief for Appellant at 12.

[13] *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015). This is not to limit the scope of Rule 16 by excluding "constructive possession" from its purview, but only to recognize that since "[c]onstructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object," *id.*, it is covered by the terms "custody" and, in particular, "control."

The second term, "custody" typically refers to the (often temporary) "care and control of a thing or person for inspection, preservation, or security."[14] Unlike "possession," which might be understood to imply a property interest or usage right of some kind, the term "custody" makes clear that the government must disclose discoverable items in which it has no such interest or right and that it merely holds for the benefit of another.[15]

Last but not least is the term "control." This court has not yet had to consider the definition of "control," as that term is used in Rule 16, when the item in question is in the hands of a private or other non-governmental entity – which is the pertinent question in this case. However, under the corresponding federal Criminal Rule and the similar discovery provisions of the Federal Rules of Civil Procedure, courts have held that "control" in that situation means the government has the "legal right" and ability to obtain the item from the other entity "upon

---

[14] *Custody*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[15] *See, e.g.*, *In re Q.D.G.*, 706 A.2d 36, 38 n.5 (D.C. 1998) (motor vehicle allegedly driven by respondent without owner's consent and towed to police impoundment lot *held* subject to discovery under Rule 16 as a tangible item "in the custody or control" of the District).

demand."[16] The term "control" normally implies, in other words, the government's "direct or indirect power" to acquire or access the materials at will and by right.[17] The government's right to obtain material from another entity on demand may arise under extrinsic law, as when the material is the property of the government. It also has been held to arise by express agreement[18] or where the government shares access to, and utilization of, materials acquired or used in an investigation conducted jointly with the other entity.[19] It is not enough, however, that the entity

---

[16] *United States v. Stein*, 488 F. Supp. 2d 350, 361 (S.D.N.Y. 2007) (citing, *inter alia*, 7 MOORE'S FEDERAL PRACTICE § 34.14[2][b], at 34-63 to 34-64 (3d ed. 2006)); *see also, e.g.*, *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' [of a party] for purposes of [discovery] if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand.").

[17] *Control*, BLACK'S LAW DICTIONARY.

[18] *See, e.g.*, *Stein*, 488 F. Supp. 2d at 362-64 (government has "control" over documents in possession of private company where access is provided by contractual agreement).

[19] *United States v. Poulin*, 592 F. Supp. 2d 137, 143 (D. Me. 2008) (finding governmental "control" over recording equipment in state sheriff's office based on its participation in federal criminal investigation and prosecution, under exception to the general rule that the term "government" in Rule 16 does not encompass local law enforcement agencies). This situation rarely arises where the other entity is a private, non-governmental body. *See, e.g.*, *United States v. Finnerty*, 411 F. Supp. 2d 428, 433 (S.D.N.Y. 2006) (holding that Rule 16 did not require the government to produce documents generated in an internal investigation conducted by New York Stock Exchange; "[t]he mere fact that the Government may have requested

*(continued…)*

in possession of the item would be willing to permit access or provide the item on request; the need for the possessor's voluntary acquiescence shows that control is lodged in the possessor rather than the government. Moreover, acceptance of such an expanded definition of Rule 16 "control" would impermissibly impose on the government a duty to acquire evidence it does not have, which is, as we have said, well beyond the Rule's intended scope.[20]

Similarly, the fact that the government (like the defendant or any other party) might obtain or gain access to an item from its possessor by means of a subpoena *duces tecum* or other discovery mechanism cannot be enough to establish that the government has "control" over the item within the meaning of Rule 16; on the contrary, the need to resort to such legal process would show that the basic indicia of control are absent.[21] And it goes without saying that the government's ability to take a thing by force without right does not equate to Rule 16 control.

---

*(…continued)*
and received documents from the NYSE in the course of its investigation does not convert the investigation into a joint one").

[20] See the cases cited *supra*, in footnotes 10 and 11.

[21] *See United States v. Sarras*, 575 F.3d 1191, 1215 (11th Cir. 2009) (holding that the government did not have "possession, custody, or control" of evidence that could have been subpoenaed from third parties; "[i]t was not the government's responsibility to track down third-party evidence for [the

*(continued…)*

Thus, while appellant proposes that "control" should be understood to encompass the government's "practical ability" to obtain material held by another party, we consider that to be an overbroad formulation, and one that case law has repudiated. In *Nelson*, for example, when this court held that "[t]he government is not obligated to obtain [evidence] from private sources, which it does not intend to use for trial, to meet the requirements of . . . Super. Ct. Crim. R. 16,"[22] we "reject[ed the] . . . argument that the ability to obtain materials from private sources constitutes constructive possession of them" for purposes of that Rule.[23]

---

*(…continued)*

defendant]"); *see also United States v. Graham*, 484 F.3d 413, 417-18 (6th Cir. 2007) (government's due process obligation to disclose exculpatory evidence does not extend to material the government would have to obtain from a witness by subpoena, even though the witness is cooperating with the prosecution pursuant to a plea agreement, because such material is not within the government's control). Following these decisions, we also would not say that a party in litigation has what Rule 16 means by "control" over documents merely because the party could obtain access to them through discovery.

[22] *Nelson v. United States*, 649 A.2d 301, 308 (D.C. 1994)

[23] *Id.* at n.9; *see also, e.g.*, *Sarras*, 575 F.3d at 1214-15 (holding that Rule 16 did not require government to obtain and disclose evidence in possession of cooperating victim and witness); *United States v. Neal*, 512 F.3d 427, 436 (7th Cir. 2008) (federal prosecutors under no duty to obtain evidence in the possession of state police, "even if the prosecution is aware of the items") (quoting *United States v. Hamilton*, 107 F.3d 499, 509 n.5 (7th Cir. 1997)).

Appellant counters that in *Robinson*[24] the court held that under Rule 16 the government must undertake to obtain evidence from third parties for disclosure to the defense when the government knows or should know of its existence and materiality even if the government does not have a legal right to obtain the evidence upon demand. That is a misreading of the case, however. *Robinson* did not involve evidence in private hands or evidence to which the government lacked legal entitlement. Rather, the issue, as the court framed it, was "whether the government has a duty to preserve evidence obviously material which, as the trial court found, the police knew or should have known about, and could have obtained if requested promptly from another government agency."[25] The evidence in question, a recording of the defendant's allegedly threatening phone call from prison to the complainant, had been in the possession of a District of Columbia

_____

[24] *Robinson v. United States*, 825 A.2d 318 (D.C. 2003).

[25] *Id.* at 327. It also should be noted that *Robinson* did not involve the provision of Rule 16 at issue in the present case. The provision at issue in *Robinson*, former Rule 16 (a)(1)(A) (2000), required the government to disclose to the defendant "any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, *or by the exercise of due diligence may become known*, to the attorney for the government." *See id.* at 325 n.3 (emphasis added). We understand the "due diligence" requirement, which does not appear in the provision of the Rule at issue in the present case, to explain why the *Robinson* court focused on what the police "should have known" in addition to what the police actually knew. That is not the issue before us and it calls for a different inquiry from the one we must undertake in this case.

government agency, the Department of Corrections ("DOC"). Although the DOC may not have been subject to Rule 16's preservation requirements because it is not "an investigative arm" of the government,[26] the District of Columbia police knew or should have known that the DOC had the recording of the phone call, and the court took it as a given that the police, as part of the *same* government, would have had unfettered access to it and readily could have obtained and preserved it had they acted in time. On that premise, the evidence was within the government's control for purposes of Rule 16 even though it was not within the actual physical possession of the police. Accordingly, we held that Rule 16 imposed an obligation on the police, "as an integral part of the prosecution team," to secure the recording for the defendant's pretrial inspection.[27] This conclusion has no application where the evidence is in private or non-governmental hands.

---

[26] *Id.* at 327. The court refrained from deciding whether or to what extent the DOC was subject to Rule 16 because, we said, "our focus here is not on [the prison] officials, but on the police, which we already have recognized forms an integral part of the prosecution team." *Id.* at 328.

[27] *Id.* Under these circumstances, we concluded, "the tape recording was in the government's 'possession' for . . . Rule 16 purposes" regardless of the non-investigatory status of the DOC. *Id.* Arguably it would have been more accurate to say the recording was in the government's "control" for Rule 16 purposes because the government's "prosecution team" had the right to obtain the recording from the DOC on demand.

In the present case, after appellant was apprehended, the security tags and the surveillance footage at issue may have been in the possession, custody, or control of Wal-Mart (more specifically, its Asset Protection staff members Bryant and Davis), but Officer Webster never handled or took charge of them. Nor did he undertake to tell Wal-Mart's employees what to do with the items. Although Wal-Mart employed Officer Webster to provide uniformed police security at the store, the record does not show that Wal-Mart had placed him in charge of its property or given him authority over its asset protection personnel. Wal-Mart was legally free to dispose of the security tags and surveillance tape as it wished; the government had no contractual or other legal interest in or entitlement to them.

Appellant argues that Bryant and Davis, as "parties investigating [him] in pursuit of a criminal prosecution" along with Officer Webster, were "members of the prosecution team" whose "investigatory actions must be attributed to the government so that the government may not evade its obligations" under Rule 16.[28] But the record does not show this to be a case in which the government engaged in such evasion, for example by "leaving relevant evidence to repose in the hands of

---

[28] Supplemental Br. for Appellant at 7.

another . . . while utilizing [its] access to it in preparing [its] case for trial."[29]  It is more accurate to say that Bryant and Davis were witnesses who reported what they observed to Officer Webster and cooperated with him when he proceeded to investigate and arrest appellant.  In doing so, they were private parties acting as agents of their private employer to protect its property from theft, not as agents of law enforcement.[30]  While we assume there can be circumstances in which a private party is sufficiently aligned with and subject to the direction of the police or prosecutor as to be deemed a member of the prosecution team for Rule 16 purposes,[31] we do not find such circumstances to be present here.  The Wal-Mart Asset Protection staff members did not join the government's prosecution team merely by being cooperating witnesses, who "stand in a very different position in relation to the prosecution than do police officers and other governmental

---

[29]  *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) (quoting *United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997)).

[30] *See United States v. Lima*, 424 A.2d 113, 121 (D.C. 1980) (Rejecting the argument that "security employees who go around walking, talking, acting and getting paid like policemen should in fact be treated as policemen for the purposes of the Fourth Amendment" because "[p]rivate businesses have a right to protect their property from damage and loss.  But they enjoy no special public trust, nor do they have any special powers in protecting their property") (internal quotation marks omitted).

[31]  We suppose, for example, that a private party working for the police as a paid informant might be under sufficient governmental control as to be deemed a member of the prosecution team in a case.

agents."[32]   As cooperating civilian witnesses, Bryant and Davis did not subject themselves or Wal-Mart to the governance of the police or prosecution or the requirements of Rule 16.   The government did not gain actual "control" of evidentiary items in their or Wal-Mart's possession within the meaning of that Rule merely because they voluntarily provided information and aid to Officer Webster in the performance of his duties.

We conclude that the security tags and surveillance footage were never in the government's possession, custody, or control, and that the government's failure to preserve those items for appellant's inspection did not violate Rule 16 or call for judicial sanction.

We cannot say the same about the watches recovered from appellant at the Wal-Mart.  As Officer Webster testified, he searched appellant and "seized" the watches from appellant's person.  Although Officer Webster then returned the merchandise to Wal-Mart, it is clear that for some period of time he had "care and control" of the watches for "inspection, preservation, or security."[33]   Hence the watches were within Officer Webster's, and therefore the government's, actual

---

[32] *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007).

[33] See *supra*, footnote 15.

physical custody, if only briefly so.[34] While it may be understandable that the officer promptly turned over the watches to Wal-Mart, his brief custody of them was sufficient to trigger the government's obligation under Rule 16 to take appropriate steps to preserve the watches in order to make them available for appellant's inspection.[35]

There is no question that the watches constituted discoverable evidence under Rule 16 (a)(1)(E), because (even if the government did not intend to use them in its case-in-chief) they did not have to be exculpatory or helpful to appellant to be "material" to the preparation of his defense and, in any event, they were obtained from appellant.[36] We therefore must turn to the question of whether

---

[34] "Evidence in the possession of [the Metropolitan Police Department] is considered to be within the 'custody or control' of the government." *Koonce v. District of Columbia*, 111 A.3d 1009, 1013 n.5 (D.C. 2015) (citing *Robinson v. United States*, 825 A.2d 318, 327 (D.C. 2003)).

[35] *See, e.g.*, *Marshall v. United States*, 340 A.2d 805, 809 (D.C. 1975) (finding violation of Rule 16 where police officer recovered stolen purse and returned it to its owner; "it is clear the purse should have been preserved by the police as potential evidence, at least until the defense was given an opportunity to examine it"); *see also Rodriguez v. United States*, 915 A.2d 380, 388-89 (D.C. 2007) (return of complainant's property recovered from robbery suspect was a violation of statute requiring police to preserve stolen property that comes into their possession).

[36] *See Koonce*, 111 A.3d at 1016; *United States v. Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998).

the court abused its discretion by not sanctioning the government for its failure to preserve the evidence. We have said that, in deciding "what sanction, if any, to impose" on the government for its breach of such an obligation, a trial court should "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial[,] in order to come to a determination that will serve the ends of justice."[37] The deliberate destruction of evidence to hinder the defense generally merits severe sanction, and gross negligence leading to the loss of evidence usually calls for meaningful sanction as well.[38] But a merely negligent or good faith failure to preserve discoverable

---

[37] *Rodriguez*, 915 A.2d at 389 (internal quotation marks omitted); *see also Smith v. United States*, 169 A.3d 887, 892 (D.C. 2017) (same); *cf. Simmons v. United States*, 999 A.2d 898, 901 (D.C. 2010) ("In deciding whether to impose sanctions for failure to disclose discoverable evidence, the trial court in any case must consider 'the reason for the non-disclosure, the impact of non-disclosure, and the impact of the proposed sanction on the administration of justice.'") (quoting *Allen v. United States*, 649 A.2d 548, 552 (D.C. 1994)).

[38] In *Arizona v. Youngblood*, the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58 (1988). We have understood that dismissal of the prosecution normally is not an appropriate sanction for a Rule 16 violation absent bad faith amounting to a denial of due process. *See, e.g.*, *Koonce*, 111 A.3d at 1019 ("As there was no bad faith on the part of the government, appellant's right to due process was not violated and dismissal was not required."); *Williams v. United States*, 77 A.3d 425, 437-38 (D.C. 2013) ("The decisions whether and how to sanction the government for a violation of Rule 16 are committed to the discretion of the trial judge. This determination depends in part on how culpable the government was in losing or destroying the evidence. When a defendant seeks the

*(continued…)*

evidence does not automatically require a trial court to impose a penalty; "the court may excuse it and refuse to apply sanctions."[39] Moreover, at least in the absence of bad faith on the part of the government, "[e]ven when it appears that the trial court has erroneously exercised its discretion in denying sanctions, we will reverse only if the error substantially prejudiced appellant's rights."[40]

In this case, although the trial judge may have overlooked the fact that Officer Webster momentarily did have the watches in his custody, we are satisfied that the judge nonetheless exercised her discretion appropriately in declining to sanction the government for the officer's failure to retain and preserve them for

_____

*(…continued)*
full sanction of dismissal for his case, however, this court has held that '*Youngblood* . . . controls,' requiring a showing of bad faith on the part of the police.") (citing *United States v. Day*, 697 A.2d 31, 36 (D.C. 1997); other internal citations omitted).

[39] *Rodriguez*, 915 A.2d at 389; *Cotton v. United States*, 388 A.2d 865, 870 (D.C. 1978) ("[H]aving established negligent government nonpreservation of evidence does not end the inquiry. We must next assess the degree of prejudice suffered by the defense[.]").

[40] *Simmons*, 999 A.2d at 901 (internal quotation marks omitted); *see also Cotton*, 388 A.2d at 871 ("[T]he failure to apply sanctions did not substantially prejudice appellant or significantly contribute to the verdict rendered against him. . . . We will not hesitate in the future to reverse the trial court for failure to apply reasonable sanctions where there is conceded negligence of the government and the defendant demonstrates substantial prejudice as a result of the nonpreservation of discoverable evidence.").

appellant's inspection. First, the record supports the judge's finding that there was no bad faith and that Officer Webster was at worst negligent in relinquishing the watches to Wal-Mart. Although Officer Webster's decision to return the watches to the Asset Protection personnel obviously was "deliberate," that did not mean he "acted in bad faith, for the purpose of preventing appellant from examining the [watches] or making evidentiary use of [them] at trial."[41] Second, appellant did not request a sanction specific to the watches other than dismissal of the information, which was unwarranted in the absence of bad faith on the government's part.

Third, the watches were not important evidence; their evidentiary value to appellant was "speculative" at best.[42] The proof of appellant's guilt adduced at trial by the government was substantial, and the watches would not have weakened it. Indeed, appellant did not identify any significant prejudice to his defense from the loss of the watches. There has been no showing, and we see no reason to posit, that their production would have exposed material inaccuracies in the testimony of the government's witnesses or been helpful to the defense in any other way. Appellant argues that the failure to preserve the watches for his inspection

---

[41] *Koonce*, 111 A.3d at 1021.

[42] *Rodriguez*, 915 A.2d at 390; *Marshall*, 340 A.2d at 810.

prevented him from establishing their physical characteristics to show that they were too large for nine of them to fit in his pocket. However, the absence of the watches did not prevent appellant from making such a showing (if it could have been made) because he had Bryant's "training receipt" identifying and describing the watches.[43] This would have enabled him to obtain the same model watches to use in the proposed demonstration.

For the foregoing reasons, we hold that the trial judge did not abuse her discretion in declining to sanction the government for its failure to preserve the tangible evidence relating to appellant's activity at Wal-Mart.

**III.**

Following his arrest, appellant was charged by information with one count of shoplifting and two counts of misdemeanor threats. Two months later, on December 2, 2014, the government moved to amend the information by reducing the threats charges to attempted threats. Appellant opposed the motion, but the trial judge granted it on February 23, 2015, prior to the start of trial. Appellant argues that the judge erred in granting the motion to reduce the charges, and that

---

[43] See *supra*, footnote 1.

this ruling prejudiced his defense because it deprived him of his statutory right to a jury trial.[44]

We reject appellant's argument. Pursuant to Superior Court Criminal Rule 7 (e), the trial court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.[45] Even assuming that the amendment in this case charged a "different offense,"[46] it was not reversible error unless appellant was prejudiced.[47] No prejudice to appellant's substantial rights has been identified

---

[44] *See Jones v. United States*, 124 A.3d 127, 131-32 (D.C. 2015).

[45] *See also id.* at 132.

[46] *See id.* at 132 n.10. *But see Government of the Virgin Islands v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982) ("Because a lesser included offense is, by definition, composed exclusively of some, but not all, of the elements of the offense charged, it would never constitute a 'different' offense . . . within the meaning of Rule 7 (e).").

[47] *Jones*, 124 A.3d at 132 n.10; *see also Jenkins v. United States*, 902 A.2d 79, 81 n.1 (D.C. 2006) ("Ms. Jenkins was originally charged with making threats to do bodily harm . . . . The government subsequently moved to amend the information, and the trial judge granted the government's motion. '[T]he government was permitted to charge [Jenkins] with attempted threats even though it could prove the completed offense.'") (quoting *Evans v. United States*, 779 A.2d 891, 894 (D.C. 2001)).

or is apparent here.[48]   By itself, the fact that appellant would have enjoyed a statutory right to be tried by a jury had he been prosecuted for threats instead of attempted threats is not enough to show such prejudice.[49]  Appellant asserts that the amendment prejudiced his defense by forcing him to alter his trial preparation and strategy, but this claim is conclusory and unsubstantiated.   Appellant had ample notice of the need to prepare for a bench trial instead of a jury trial, and he has not explained how his defense would have been different had the judge denied the government's motion to amend the information.  Appellant has not established that the judge abused her discretion or otherwise erred in permitting the amendment.

---

[48] *Cf. Williams v. United States*, 641 A.2d 479, 483 (D.C. 1994) (explaining that trial court did not abuse its discretion by permitting the government to narrow an indictment before trial by substituting lesser included offenses).

[49]  *See Evans*, 779 A.2d at 895 ("[H]ad Evans been prosecuted for threats instead of attempted threats, he would have enjoyed a right to be tried by a jury. But that does not mean that Evans's rights were violated.  The existence of a right to a jury trial depends on the maximum punishment for the offense that is charged, not on the maximum punishment for an offense that could be charged but is not. Ultimately, Evans was charged with attempted threats. Since the maximum punishment for that offense fell below the statutory threshold, Evans was not denied any statutory right to a jury trial, for he simply had no such right.").

**IV.**

For the foregoing reasons, we affirm appellant's convictions and the judgment of the Superior Court.

EASTERLY, *Associate Judge*, concurring: I join the opinion of the court, which cogently explains what it means for the government to be in possession, custody, or control of an item such that the government's disclosure obligations under Rule 16 (a)(1)(E) are triggered. I write separately to note only that in the parties' discussion of police "control" over discoverable items in this case, the parties never mentioned, either at trial or in their briefs, the particular terms of Officer Webster's outside employment at Wal-Mart. *See ante* at 10 (explaining that "control" may arise "by express agreement"). Specifically, we have not considered the terms of Wal-Mart's agreement with the MPD. *See generally* PD Form 180-B (Employer's Agreement to Conditions of Employment which expressly provides that "[m]embers may engage in police-related outside employment only if their police powers are in effect and the member complies with all applicable provision[s] of the D.C. Official Code and the Police Manual pertaining to the performance of duties."); *see also* 6A DCMR § 300.9 (1982) (requiring "written approval for each outside employment situation"); 6A DCMR §

302.1-.2 (2000) (requiring notice and approval by Department, Commanding Officer, and Chief of Police to engage in outside employment); 6A DCMR §303.11 (1983) (requiring an officer to "ensure that his or her outside employer is familiar with the contents" of PD Form 180-B); MPD General Order 201.17 (VI)(H) (2004) (pursuant to 6A DCMR § 302.1, officer must submit PD Form 180 (Request to Engage in Outside Employment),  PD Form 180-B (Employer's Agreement to Conditions of Employment), and employer's liability insurance to the Department prior to accepting such employment).  Likewise, we decide this case without considering the import if any of Officer Webster's retention of his police powers, *see* 6A DCMR §§ 300.10, 303.05; *see also Mattis v. United States*, 995 A.2d 223, 226 (D.C. 2010), and his obligation to "comply with all laws and directives of the Chief of Police as if the member was on duty and in the performance of duty," 6A DCMR 300.2 (e), which includes the "preservation of potentially discoverable material."  MPD General Order 601.02 (2004).